## Commonwealth *v.* Phila. Rapid Transit Co., Appellant.

*Taxation—Corporations — Car trust certificates — Act of June 17, 1913, P. L. 507, and July 15, 1919, P. L. 955—Statutes—Construction—Strict construction—General and particular reference— Implied extension—Amending statute.*

1. In construing a statute the name by which an object may be called or by which the court may designate acts, will not be permitted to conceal the true nature of the theory spoken of, or the transaction under consideration.

2. In determining for tax purposes whether the effect of documents creates an evidence of indebtedness either issued or assumed,

and on which interest is paid, the courts will be guided solely by what appears in the writings themselves and the legal relations that arise by reason of them.

3. While a particular reference is considered as controlling over a general reference in a statute, yet it must give way to a later statute emphasizing a legislative intent to regard the general reference as controlling.

4. Rules for the construction of statutes yield to a legislative mandate as to how a special statute should be construed.

5. Taxing statutes should receive a strict construction; the words should be clear and unambiguous; it is not enough to show that the absence of a tax works injustice.

6. The words of a taxing statute cannot be extended by implication, and in cases of doubt the construction should be against the government.

7. Equipment trust certificates issued under what is known as the "Philadelphia Plan" are certificates or evidences of indebtedness within the meaning of section 17 of the Act of June 17, 1913, P. L. 507, as amended by the Act of July 15, 1919, P. L. 955, and are taxable for state purposes under that section and not for county purposes under section 1 of the Act of 1913.

8. Under the "Philadelphia Plan," the equipment is only part of the security; the lessee of the equipment is under general liability to pay not only the rental due but also the rental to become due until a sum is realized sufficient to pay in full the face value of the certificates with the money charged for its use; the certificate is therefore an evidence of indebtedness within the meaning of the act. The sum paid is not for the use of property, but as compensation for the use of money.

9. It is immaterial that such sum is to be paid to a trustee instead of directly to the participating owners.

10. Where the lessor of equipment to a railway company assigns by an agreement in writing the lease to a trustee with provisions for the collection of rentals, etc., and payment of the same to holders of the trust certificates issued by the trustee, the lease and the assignment reciting the lease are to be considered as one instrument.

Argued May 25, 1926.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 21, May T., 1926, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1925, No. 139, for Commonwealth, in case of Common-

wealth v. Philadelphia Rapid Transit Company. Affirmed.

Appeal from tax settlement. Before Fox, J.
The opinion of the Supreme Court states the facts.
Judgment for Commonwealth. Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*Boyd Lee Spahr,* with him *Allen Hunter White, James V. Murray,* and *Ellis Ames Ballard,* of *Ballard, Spahr, Andrews & Madeira,* for appellant.—Equipment trust certificates were not taxable under section 17 of the Act of 1913 prior to the amendment of 1919: Com. v. R. R., 268 Pa. 271.

The amendment of 1919 does not impose a tax on equipment trust certificates: Com. v. Megargee Bros., 275 Pa. 12; Com. v. Reed's Sons, 275 Pa. 20.

Even if the effect of the amendment is to transfer the tax on "car trust securities" from section 1 to section 17, only such "car trust securities" are taxed as are loans.

Equipment certificates issued under the Philadelphia plan are not embraced within the phrase "scrip, bonds, certificates and evidences of indebtedness issued or assumed, or on which interest shall be paid," and are therefore not subject to tax under section 17: Com. v. Water & Power Co., 271 Pa. 456; Schmidt v. Bader, 284 Pa. 41; Stiles v. Seaton, 200 Pa. 114; Federal Sales Co. v. Kiefer, 273 Pa. 42; Scattergood v. Coal Co., 5 Pa. D. & C. 107; Com. v. Wert, 282 Pa. 575; O'Malley v. O'Malley, 272 Pa. 528, 536; Levin v. Bank, 277 Pa. 350, 355; Kates's Est., 282 Pa. 417, 425.

*Philip S. Moyer,* Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for appellee.—Equipment trust certificates are taxable under section 17 of the Act of June 17, 1913, P. L. 507, as amended by

the Act of July 15, 1919, P. L. 955: Com. v. Megargee Bros., 275 Pa. 12; Phila. Co. for Guaranteeing Mortgages v. Realty Co., 275 Pa. 18.

Equipment trust certificates here in question are evidences of indebtedness assumed by appellant, and on which interest was paid by appellant.

The main contention of appellant appears to be that the leases of appellant company are bailment leases and as such are not within the particular kinds or species of loans made taxable under section 17 of said Act of July 15, 1919, P. L. 955. This contention is made, notwithstanding the fact that in the case of Com. v. Lehigh & New England R. R., 268 Pa. 271, it was held that "car trust securities" might be embraced within the phrase "certificates of indebtedness" as used in section 17 of the Act of 1913 amended by said Act of 1919, and notwithstanding the fact that this court in the case of Com. v. Megargee Bros., 275 Pa. 12, said that since the amendment of 1919, short term notes and car trust certificates have both been subject to the State Corporate Loans Tax: Com. v. R. R., 164 Pa. 252; People v. N. Y. Cent. R. R., 199 N. Y. 539.

OPINION BY MR. JUSTICE KEPHART, June 26, 1926:

The levy made under section 1 of the Act of June 17, 1913, P. L. 507, imposing a tax on loans, including car trust securities, was for county purposes (Com. v. Lehigh & New England Railroad Co., 268 Pa. 271); the State could not claim the tax under section 17 of the same act. This latter section was amended by the Act of July 15, 1919, P. L. 955, providing as follows: "Section 17. That all scrip, bonds, certificates and evidences of indebtedness issued......or assumed, or on which interest shall be paid, by any and every private corporation,......are hereby made taxable......for state purposes." At the end of the section, the 1919 amendment added the following paragraph: "It is the intent of this act that all scrip, bonds, certificates, and evidences of

indebtedness made taxable under this section are not taxable under section one (1) of the act to which this is an amendment, and that only such scrip, bonds, certificates, and evidences of indebtedness which cannot be made taxable under this section are to be taxed under section one (1) of said act."

The Commonwealth, believing car trust certificates had been moved from section 1 to section 17, assessed a tax against this appellant, from which an appeal was taken to the court below; it was there held the tax was properly assessed under the amended section. This appeal follows.

Because of the terminology used in this act and the character of the instruments under consideration, it is contended the amendment did not impose any tax on equipment trust certificates. The name by which an object may be called, or by which we may designate acts, will not be permitted to conceal the true nature of the thing spoken of, or the transaction under consideration. In approaching the question as to whether the effect of the documents created an evidence of indebtedness either issued or assumed, and on which interest was paid, we will be guided solely by what appears in the writings themselves and the legal relations that arise by reason of them.

Preliminarily, we agree with the court below that the effect of the amendment was to transfer car trust certificates from section 1 to section 17. While the intent clause of this section does not broaden the subjects of taxation mentioned in it, it does specifically declare that only when scrip, bonds, etc., cannot be made taxable under this section, they are to be placed under section 1. Car trust certificates were given a definite status in section 1, being specifically named in that section in the Act of 1913. It was because of this specialization we held they were not taxable under section 17. They remain thus classified since the amendment of 1919, and if it were not for the strong language used in the intent

paragraph, which shows the evident purpose and desire of the legislature to bring all taxable subjects within that section which theretofore have been considered as being in either section, we might feel constrained to hold they still remained in section 1. But a particular reference, being considered as controlling over a general reference in a statute, must give way to a later statute emphasizing a legislative intent to regard the general reference as controlling. Rules for the construction of statutes yield to a legislative mandate as to how a special statute should be construed. In Com. v. Lehigh & New England R. R. Co., supra, we held, where the subject was taxable under section 17 as well as section 1, it was taxed under the latter section. This was because of irreconcilability and double taxation, applying the principal above referred to, stated in Endlich's Interpretation of Statutes, section 216. In Com. v. Megargee Bros., 275 Pa. 16, in discussing the question whether certain mortgages were evidence of indebtedness, we said the principle relied on in Com. v. Lehigh & New England R. R. Co., supra, did not apply. The amendment of 1919 brought this subject of taxation under section 17. This reasoning as to car trust securities was used in sustaining the Commonwealth's position that the mortgages then under investigation, though not named in section 17, must be considered as included in "evidence of indebtedness." Appellant states that this is inapplicable to the present case; we do not so regard it. The facts here and there involved have a close and necessary relation, even if the facts do not make it so that the principle discussed is the same. It is, as the court below found, conclusive of the first question presented, that the specific reference must control.

In defining loans under section 1, it was legislatively determined that a car trust security was a form of loan, but whether it was so or not would not conclude its taxability, if the legislature decided to make it a subject of taxation. Section 17 concerns itself with four classes

of corporate debtor relations.   To bring equipment or corporate trust securities within any of them it must appear that they possess one of the elements called for. This brings us to the main question in the case: Are the equipment trust certificates issued under the Philadelphia plan embraced within the ordinary meaning of "scrip, bonds, certificates and evidence of indebtedness issued or assumed, or on which interest has been paid"?

Taxing statutes should receive a strict construction (Boyd v. Hood, 57 Pa. 98); the words should be clear and unambiguous (Com. v. Pennsylvania Water & Power Co., 271 Pa. 456, 458); it is not enough to show that the absence of a tax works injustice (Callery's App., 272 Pa. 255, 257); nor can the words be extended by implication; and in cases of doubt the construction should be against the government.   Gould v. Gould, 245 U. S. 151, 153; United States v. Merriam, 263 U. S. 179, 188.

It is admitted that car trust securities are not bonds or scrip.   To answer whether they fall within any of the other classes, we must ascertain what the Philadelphia plan is.

Many millions are invested in car trust securities.   It is a form of investment which enables railroad companies to secure necessary equipment through a method of financing that gives to the person advancing the money a satisfactory ownership or security in property, freed from ordinary corporate claims.   It is dependent on the making of an enforceable lease, for once the title passes to the company the property is marked by corporate ownership and then becomes subject to all the disabilities under which such property is customarily held. By leasing the property the title remains with the lessor. The structure of the lease is, in its general legal aspects, similar to an ordinary bailment lease or contract.   It is effective to do the work required and is recognized by our statutes in that, by the Act of July 5, 1883, P. L. 176, it must be recorded.   It is altogether legal that this ownership, vesting in one person, may legally be split

into many parts, and these parts' may be sold or distributed to and among those who are thereafter the owners. This may be accomplished through the lessor owner, himself or itself, as the case may be, or through a trustee, the usual method; the latter may issue a document signifying such ownership. It is here, as is the usual custom, called a "car trust security." This method of splitting ownership does not detract from its efficacy as a bailment contract, and preserves intact its verility as such. Indeed, such instruments of leases may contain provisions for interest and promissory notes, covering the total value. These are recognized as being legitimate parts of a bailment contract: Wilson v. Weaver, 66 Pa. Superior Ct. 599, 604. They may be in favor of the original owner lessor, or be the property of the substituted owners. Whether the transaction is directly with the lessor, or, as here, through a trustee for substituted owners, by separate or joint assignment, to which the lessee is a party, the lease may have the dual effect of being an instrument evidencing completely part ownership, and an obligation calling for the payment of a sum of money. It is not necessary that they be expressed in separate papers, and either or both methods of enforcing the demand may be pursued, subject to our rules heretofore announced in like cases. This quality of combining a retention of title and ownership and a note calling for the payment of money is not referable solely to the law of bailments, but arises through that law, plus the contract on which the entire relationship is founded. We have, then, embodied in the same document, not only an obligation to pay, but as well a participating owner's certificate.

In determining whether the facts in the instant case are covered by the above principles, we must find, within the lease and all of the papers connected with it or a part of it, an obligation issued or assumed apart from paying rentals as such, and on which interest has been paid.

The ordinary bailment lease, without more, could scarcely be considered as coming within the provisions of this act, though the entire value is to be paid in rentals, and title may pass when a dollar is paid. But a different question arises, where, as here, the lessor, by virtue of the property owned, issues and sells independent instruments, call them participating certificates if you will, with all the characteristics of interest bearing securities, by which a sum of money is raised and which sum, with a stipulated annual charge for its use, is to be repaid the owner. Such documents possess in a stronger degree the dual properties indicated above.

Here we have an ownership in a lessor, who leases to a railroad company, and an agreement of assignment containing the form of a car trust certificate, followed by the issuance of such certificate. This is a typical method, unobjectionable as a bailment. The lease, the primary paper, is for a term of years, a specified return in rent being named. It covers the purchase price of the property and is payable in certain installments, three-fourths of which are periodical. Penalties are attached for failures to comply with the conditions, and rights are granted to the lessee to become the ultimate owner by paying one dollar; no redelivery is specified, but that is unnecessary: Stiles v. Seaton, 200 Pa. 114, 118; Federal Sales Co. v. Kiefer, 273 Pa. 42, 45. Certain rights appertain to the participating owners or the trustee in case of a default. The assignment from the lessor to the trustee takes with it all the rights of the lessor, and creates broader conditions, not stipulated in the original contract. The car trust securities themselves do not exceed the terms of the lease, or the assignment.

While it is true they are issued by the trust company only, the railway company, by the writings, assumes a relationship to them which in law must be considered as if it had been written into the original contract, or at least it may be said the debt was assumed by the railway company. It stands precisely in the same attitude as

though it had given to its lessor notes or bonds covering the rental.  If they had been sold it can scarcely be said they were not evidences of indebtedness.  This lease was made with the further agreement that it was to be assigned to a trustee whose name was incorporated in the lease not only for the purpose of limiting the lessor's right therein, but also to mark the cars for identification.  Reading these two documents together, we cannot escape the conclusion that they must be considered, so far as the question before us is concerned, as being one instrument.

In matters of this kind, particularly that of taxation, we look through the form to the substance.  The railway company thus became a party to the assignment from the lessor to the trustee, who was to represent the participating owners to whom these certificates were sold.  The equipment was only part of the security.  The railway company laid itself open to general liability on these securities.  The instrument reads as follows: "The par value of this security will be payable on the first day of ———, A. D. 19——......In the meantime dividends hereon will be payable as evidenced......Both are payable......out of the rentals......of certain cars.......by Gest to Philadelphia Rapid Transit Company...... [who has] reserved the right......to call......this ......certificate at 102½."

This was the form agreed on in the assignment from the lessor to the trustee.  In the same instrument this appellant accepted and became bound by the terms of that agreement.  Therein, in case default was made in any covenant of the lease, the trustee or the owner, in addition to retaking the cars with the incidents attached thereto, had power to recover from the lessee for rent due or to become due until a sum was realized sufficient to pay in full the par value and the dividend warrants.

Here was an agreement to pay money on a certain date; a further obligation that, in case of default, the railway company would pay "all accrued dividend war-

rants and the par value of the certificates," not out of rentals, but out of its general property. As thus read, this in substance is more than an agreement to pay rentals; the papers in terms provided for a debtor who must ultimately be liable for the payment in full of the face of this certificate, and a money charge for its use.

The sum specified as a dividend which the Commonwealth claims is an interest return, is equal to six per cent on the face of each certificate. This sum is not paid for the use of property, as was done in Commonwealth v. Phila. & Erie R. R., 164 Pa. 252, though it might be such payment in case there was a default, but its present status is a compensation for the use of the money originally turned in to the trustee. It is paid yearly on the par value of the certificate; it is this sum of money which the lessee contracts to repay either from rentals or out of its general fund. Rent is compensation for the use of land or property, while interest is a sum paid for the use of money. Dividends, common or preferred, are what the shareholder owner earns from the property without liability in case the dividends are not paid. Here, considering the rights and obligations springing from the certificate, the liability assumed by the railway company, it is idle to say, with the fact that this rent is ultimately payable as interest would be, with all the incidents and remedies attaching to it as would attach to the liability for payment of interest, that "interest" could be successfully disguised under the word "rental." That it is to be paid to a trustee instead of directly to the participating owners, is immaterial. This is the customary method where a bond and mortgage is in existence.

The situation is clearly expressed by the Supreme Court of the United States in Lederer v. Fidelity Trust Co., 267 U. S. 17, a suit by a trust company to recover a sum paid for internal revenue stamps attached to equipment certificates. The question was whether these certificates were subject to the tax under the phraseology

"On all bonds, debentures, or certificates of indebtedness issued by any person, and all instruments however termed, issued by any corporation with *interest* coupons or in registered form, known generally as corporate securities." The court stated the question to be "whether the certificates are instruments issued, etc., known generally as corporate securities."

In reversing the judgment, the court said (p. 21) : "As a matter of common speech, to which the statute refers, we have no doubt that these instruments would be known as corporate securities. They would be called so more accurately than some other documents which we believe also would be known generally by that name. Their purpose, as stated in the agreement of the trustee with the railroad, is to secure payment to the holder with interest; they do nothing else. We do not regard the precise limits of the trust company's undertaking as important. If it were only to collect and pay money received by the company under the secured contract of the railroad, it would be a security for money payment. But the counsel for the company seemed not prepared to argue that the company could not put the money received from the railroad into its general account without a breach of trust, and give the certificate holder cash or a check for his interest or principal. But be the undertaking greater or less, the security better or worse, we cannot regard these certificates as anything but corporate securities by general understanding and in fact."

Or, as stated by the court in People v. N. Y. Central Railroad Co., 138 N. Y. Appellate Division 601: "They have not promised to pay directly, but through the medium of the trustee, to which they pay the amounts due thereupon under the name of rentals, under a covenant that the trustee shall pay the same to the holders of these certificates. It would seem clear, therefore, that these trust certificates were the obligations of these companies and their obligations alone......

"The purchasers of these trust certificates are in need of the protection of the statute in the same degree as would be the purchasers of bonds and notes of the corporation. They have no more additional security than they would have in the purchase of such bonds and notes, and in the ultimate analysis they have exactly the same obligation to be paid through a trustee instead of directly by the railroad companies." Such determination is practically the same in effect as Com. v. Lehigh & New England Railroad Co., supra. Moreover, both agreements expressly state that they are "intended to be the corporate obligation of the lessee."

The cases relied on by the appellant do not fit the point before us. After a careful consideration we are all of opinion that there is an irreconcilable conflict between section 1 and section 17 as amended, and that these securities are liable to the tax for state and not for county purposes.

The judgment of the court below is affirmed.