## Commonwealth v. The Adelphia Hotel Co.

*William Katcher, David R. Perry,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for Commonwealth.

*G. L. Arnholt,* for defendant.

HARGEST, P. J., February 24, 1942.—This suit is brought to recover contributions under the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, 43 PS §751 et seq.

The case was tried by the court without a jury, although no stipulation was filed therefor. The only thing appearing of record, apparently regarded as sufficient

by both parties, was, on the back of the affidavit of defense, the stamped words, "Jury Trial Waived," signed by the attorney for defendant. Under the circumstances, we will regard the matter as complying with the Act of April 22, 1874, P. L. 109.

The claim is for $6,655.46, with interest, based on wages alleged to have been paid by defendant to certain employes, who were musicians and entertainers, in the sum of $363,515.44, for the years 1936 to 1940, inclusive.

## The Statute

The Unemployment Compensation Law defines "Employer" in section 4, 43 PS §753 (i).

"(i) 'Employer' means every—(1) individual, (2) copartnership, (3) association, (4) corporation (domestic or foreign), (5) the legal representative, trustee in bankruptcy, receiver or trustee of any individual, copartnership, association, or corporation, or (6) the legal representative of a deceased person, (I) who or which employed or employs any employe (whether or not the same employe) in employment subject to this act for some portion of each of some twenty (20) days during the calendar year one thousand nine hundred thirty-six, or any calendar year thereafter, each day being in a different week, or (II) who or which has elected to become fully subject to this act, and whose election remains in force."

The act requires every employer, by sections 301 and 302, 43 PS §781 and 782, to pay into the fund "(1) Nine-tenths of one per centum for the calendar year one thousand nine hundred thirty-six," and increasing contributions for future years.

Section 206 of the act, 43 PS §766, provides, in part, as follows:

"Each employer (whether or not liable for the payment of contributions under this act) shall keep accurate employment records, containing such information, as may be prescribed by the rules and regulations

adopted by the department. Such records shall be open to inspection by the department and its agents at any reasonable time, and as often as may be deemed necessary. The department may require from such employers such reports as it deems necessary, which shall be sworn to, if required by the department."

Section 4(*j*) provides in part:

" 'Employment' means all service performed for remuneration or under any contract of hire, express or implied, written or oral . . ."

Section 304, 43 PS §784, provides:

"Each employer shall file with the department such reports, at such times, and containing such information, as the department shall require, for the purpose of ascertaining and paying the contributions required by this act."

Section 4(*j*), second paragraph (as added by the Act of May 18, 1937, P. L. 658) provides:

"An individual performing services for remuneration in an employment subject to this act shall be deemed to be performing such services for wages, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) that such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) that such individual is customarily engaged in an independently established trade, occupation, profession or business."

### Facts

We find the following facts:

1. Defendant was a corporation of the Commonwealth of Pennsylvania engaged in the hotel business, and is a subject employer within the meaning of the Unemployment Compensation Law.

2. Defendant did not report wages or salaries paid to musicians and entertainers during the years 1936 to 1940, inclusive.

3. For the year 1936, typical of the other years, defendant company reported $317,317.92 in wages, and paid a contribution of $2,855.86. Upon an audit of the company's books, the Commonwealth's examiners "took the total of the account as shown by the general ledger and subtracted the amount reported to the department, leaving the net amount not reported" as $116,334.43, on which an additional contribution of $1,041.01 was claimed. This amount appeared on defendant's books as "Music and Entertainment." The same process was used as to the other years.

4. The books of the hotel were kept under a well-known accounting system used at that time.

5. The books of the hotel company do not show any specific sums paid for individual musicians or entertainers, or any specific sum paid to an orchestra leader.

6. Checks were drawn to cash in round numbers of $2,000 or $1900, and vouchers were filed in odd figures to make up the amount, but neither the checks nor the vouchers indicated payments to individuals.

7. In the year 1939 some checks were designated in the check register to Frank Phagen, Music Corporation of America, and Joseph Nuresola. The latter two were concerns which furnished music to hotels. There is no evidence as to Frank Phagen.

8. Every employe, before he was put on the payroll of the defendant company, appeared before the assistant auditor, gave his name, address, age, and other information, and was given a social security and unemployment compensation number, if he did not already have one.

## Discussion

In the trial of this case there seemed to be a studied attempt on both sides to present as little evidence as possible. To illustrate: The name of Jack Lynch was

brought into the evidence, with an intimation that he was a booking agent for musicians and entertainers, and counsel for the Commonwealth suggested: "I will establish that Jack Lynch has had a whole train of employes about which he would know in the ordinary course of events"; but no such evidence was offered. On the other hand, counsel for defendant said: "The system of the Adelphia Hotel Company was this: That we did have orchestras, there is no question about that; we did have entertainers, no question about that; my defense will be they made a separate contract with the orchestra leader, separate contract with the booking agent. At the end of every week a lump sum, just one lump sum of $2,000 was drawn. . . . $1,500 to a theatrical agent, $500 to the orchestra leader. Our books show $2,000. Now, the Adelphia Hotel Company did not know how much the orchestra leader kept for himself, we did not know how much he paid to his employes, if they were his employes, we did not know how much the booking agent kept for himself, and how much he paid to the actors. . . . The leader must have kept something for himself, and the booking agent, and the orchestra leader and booking agent were not our employes." But no evidence beyond this statement was offered on this point.

No evidence was offered of contracts of any kind, written or verbal, between the hotel company and any person, agent, orchestra leader, musician or entertainer.

Both sides rested upon presumptions; the Commonwealth on the presumption contained in the act of assembly; defendant on the presumption that the burden was on the Commonwealth to prove its case.

When the Commonwealth brings suit, it is in the position of every other plaintiff, and must prove its case by the fair weight of the evidence.

Tax statutes must be strictly construed, and words must be clear and unambiguous to subject the taxpayer

to the tax: Commonwealth v. Philadelphia Rapid Transit Co., 29 Dauph. 298, 287 Pa. 190. The Commonwealth has the burden of showing that the property on which it is seeking to impose a tax comes within the statute, and any doubt or uncertainty should be resolved in favor of the taxpayer: Commonwealth v. Quaker City Cab Co., 29 Dauph. 90, 287 Pa. 161; Barber's Estate, 304 Pa. 235. Tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and the citizen cannot be subjected to special burden without clear warrant of law: Husband's Estate, 316 Pa. 361; Arbuckle's Estate, 324 Pa. 501. The court should not impose taxation by a strained construction of doubtful legislation: Krause's Estate, 325 Pa. 479. It is not enough to show that the absence of tax would work injustice: Commonwealth v. Philadelphia Rapid Transit Co., supra.

Applying these principles, it is settled that the Commonwealth must show a clear right to the tax. What the Commonwealth has shown is that, upon examination of the books of defendant, there is a difference between the total expenses of operation and the amount which defendant has reported, and upon which it has paid the unemployment compensation tax. The Commonwealth has assumed that the difference was for wages paid to persons for music and entertainment, upon which it now claims a contribution. But the statute does not impose a contribution upon the total expenses of operation, or even of entertainment. The contribution is based upon wages paid by employers. It was admitted that defendant is a "subject employer" under the act, and we have no hesitation in holding that the employment of musicians and entertainers is within the definition of "Employment" in the act.

But the question before us is whether the amount claimed by the Commonwealth is for services paid to musicians and entertainers. There is no attempt by the Commonwealth to break the item down. No effort has been made to show how the account was made up,

how much of it may have gone for advertising, for radio broadcasting, or for souvenirs used in entertainment; nor has any attempt been made to show how much was paid to booking agents, orchestra leaders, or under what contracts, if any, the individual musicians or entertainers were employed. It is shown that in three instances payments were made to Frank Phagen, Music Corporation of America, and Joseph Nuresola, and that the latter two were booking agents; but how much the agents received was not attempted to be shown. We are asked, in the absence of positive evidence, to conclude that the music and entertainment expenditures were 100 percent wage payments.

Section 206 provides:

"Each employer . . . shall keep accurate employment records, containing such information, as may be prescribed by the rules and regulations adopted by the department. . . . The department may require from such employers such reports as it deems necessary, which shall be sworn to, if required by the department."

The evidence in this case does not show that the department "by rules and regulations" required any specific kind of "employment records". There is no duty upon taxpayers to keep records in any particular way unless they are required by the rules and regulations in order to give the department the necessary information.

The Commonwealth has failed to show: (a) Who the entertainers or musicians were; (b) that they were employes of the Adelphia Hotel; (c) what wages were paid to them; and (d) by whom they were paid. It follows that the Commonwealth has not proven its case, and cannot recover, unless the burden has been shifted to defendant to supply what the Commonwealth has failed to prove.

Section 4 (j), para. 2, of the Unemployment Compensation Law, as amended by the Act of 1937, supra, provides:

"An individual performing services for remuneration in an employment subject to this act shall be deemed to be performing such services for wages, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) that such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) that such individual is customarily engaged in an independently established trade, occupation, profession or business."

Whether the exceptions (a), (b) and (c) are considered conjunctively or disjunctively, there is nothing in the evidence to bring the case within either of the exceptions (b) or (c). The question then resolves itself as to whether the first part of this paragraph, including the exception (a), as quoted, changes the burden of proof as to the defendant company.

The Commonwealth relies upon the cases of Steel Pier Amusement Co. et al., v. Unemployment Compensation Comm. et al., 127 N. J. L. 154, 21 A. (2d) 767, and Unemployment Compensation Comm. v. Jefferson Standard Life Ins. Co., 215 N. C. 479, 2 S. E. (2d) 594, 589.

In the first case it appeared that one Bartha was a musician and orchestra leader employed by the Steel Pier Amusement Company, under a contract to furnish an orchestra, for which he was paid $75 per week for himself, and each musician received $50 per week. The musicians made unemployment compensation insurance payments to Bartha, and Bartha made payments, as employer, until he received notice from the Unemployment Compensation Commission that the musicians of his orchestra were employes of the Steel Pier. The

question was whether defendant, one Bandiera, a musician, was an employe of the Steel Pier or an employe of Bartha, the orchestra leader, under the New Jersey statute.

The New Jersey statute is practically identical with ours. If there were evidence in the instant case that a musician, or a number of musicians, received a per diem or weekly compensation, such as appears in the Steel Pier case, that case would be directly in point. It holds that Bandiera and the other musicians performed services for remuneration, within the statute. The contract in that case required the orchestra to play four hours daily for a period of 12 weeks, and, as said in that case, p. 157:

"A reading of the testimony leaves no doubt that the musicians were not free from control or direction of the Steel Pier. They were subject to its control as to the time of performing, and likewise as to what they should play, if the Steel Pier expressed any such desire. They did in fact play dance music or accompaniments as directed. It is clear that Bartha was merely agent for the hiring of the men and was, for all practical purposes, a foreman. The musicians accommodated themselves to the needs and demands of the Steel Pier, and in fact took orders from and were under the control of the Steel Pier."

There is not a scintilla of evidence in the instant case from which we could find, under the converse of subdivision (a) of our statute, as above quoted, that any individual has been under the control or direction of the Adelphia Hotel "under his contract of service and in fact." This, in our opinion, takes the case out of the principle of the Steel Pier case.

In that case it is also said, quoting from an earlier case, p. 156:

"The statute . . . (subdivision A), is authority for an investigation of the relationship by looking to the contract and also to the incidents and circumstances surrounding the relationship so that it may be deter-

mined what the relationship was *in fact*. The relationship therefore must be viewed and determined from the statutory viewpoint alone . . . and we must, if reasonably it may be done, give effect to it."

This is tantamount to saying that in the instant case the Commonwealth could have investigated the relationship by looking into the contract and the incidents and circumstances surrounding the furnishing of music and entertainment, and if it had presented the circumstances to us, which brought the expenditures within the purview of the statute, we should, and, of course, would give effect to the statute. But the Commonwealth has failed to produce any such evidence.

The burden of proof, under the second paragraph of section 4(*j*) of the statute, refers to "An individual" performing services. The statute clearly means that where an individual is performing services such services shall be deemed to be performed for wages, unless the facts bring them within the exceptions (*a*), (*b*), and (*c*). There is no evidence of "an individual" performing services, and therefore nothing upon which to change the burden of proof with reference to the expenditures in the instant case. To illustrate: If it were shown by any evidence of an investigation or otherwise that one half or two thirds of any specific sum of the "Music and Entertainment Account" were for payment to individuals, the statute would operate to throw the burden of proof on defendant. Such, however, is not the case.

The other case relied upon by the Commonwealth has little application to the facts of the present case. The statute of North Carolina is, in effect, the same as our statute, but the question, insofar as that case has any application to the instant case, was whether soliciting and district agents of an insurance company were employes within the meaning of the statute, so as to render the company liable for contributions. It was held by a divided court that they were. And the court said (p. 486):

"The scope and purpose of the present act are exceptional in breadth. The draftsmanship of the definition section, which gives flesh and sinew to the whole, shows a carefully considered and deliberate purpose to leap many legal barriers which would halt less ambitious enactments. As far as language will permit it, the act evinces a studied effort to sweep beyond and to include, by redefinition, many individuals who would have been otherwise excluded from the benefits of the act by the former concepts of master and servant and principal and agent as recognized at common law."

We are quite in accord with this principle. The court should give such meaning to the legislative definitions as the legislature intended them to have, regardless of previously conceived meanings. Our difficulty is not with definitions but with the failure of the evidence to bring within the purview of the act unknown persons whom the Commonwealth contends were employes, but concerning whose employment we have no evidence whatever. In the view we take of the matter, the Commonwealth has not submitted sufficient evidence to bring defendant within the shifted burden of proof, as provided by the second paragraph of section 4(j).

## Conclusions of law

1. Under the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, and its amendments, 43 PS §751 et seq., the burden of proof in a claim for contributions under the act rests upon the Commonwealth, unless the facts bring the case within the second paragraph of section 4(j) of the act, as amended.

2. The Commonwealth does not discharge the burden of proof by showing that a lump sum was paid for music and entertainment, without showing what portion of such sum was paid for wages.

3. In order to bring the situation within the second paragraph of section 4(j) of the statute, as amended,

so as to shift the burden of proof, there must be some showing of an individual performing service who is not "free from control or direction [by the employer] over the performance of such services both under his contract of service and in fact."

4. The Commonwealth, having limited its proof to evidence of a lump sum for "music and entertainment", has not met the burden of proof in the instant case to entitle it to recover.

5. Judgment must be entered for defendant.

And now, February 24, 1942, judgment is hereby directed to be entered against the Commonwealth of Pennsylvania, and in favor of defendant, The Adelphia Hotel Company, unless exceptions be filed within the time limited by law.