Urban Redevelopment Condemnation Case.

Argued October 6, 1961. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Joseph M. Tague,* Assistant City Solicitor, with him *David W. Craig,* City Solicitor, for City of Pittsburgh, appellant.

*Philip Baskin,* Special Counsel, with him *Maurice Louik,* County Solicitor, for County of Allegheny, appellant.

*Harry J. Schmitt,* with him *Benjamin W. Haseltine, Jr.,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, December 5, 1961:

On September 18, 1959, the Urban Redevelopment Authority of Pittsburgh condemned certain property in the Second Ward of the City of Pittsburgh and, as the result of proceedings before the board of viewers, agreed to pay $7500 to the owners of the property. A dispute now arising as to the identity of the owners, the Authority paid the money into the Court of Common Pleas of Allegheny County, where it presently awaits authoritative distribution. The contenders for the amount in escrow are the County of Allegheny, the City of Pittsburgh, and the School District of the City of Pittsburgh on the one hand, and on the other, the heirs of Barbara Hahn, deceased, claiming title under her will.

The facts which churned into the present litigation are briefly as follows. Barbara Hahn died on November 2, 1928, testate, her will designating Hilda B. Wright as executrix of the estate. Acting in that capacity, Hilda Wright foreclosed on a mortgage covering the property here in controversy, with the result that the legal title became vested, by a duly recorded Sheriff's Deed, in "Hilda B. Wright, Surviving Executrix of the Estate of Barbara Hahn, deceased."

On December 18, 1930, the Orphans' Court of Allegheny County removed Hilda Wright as executrix for good cause and named the Fidelity Trust Company of Pittsburgh, administrator d.b.n.c.t.a. of the estate.

Real estate tax delinquencies followed and the City of Pittsburgh, plus the County of Allegheny and the Pittsburgh School District filed various tax liens against the property. For the years 1933 to 1942, inclusive, the City and the School District correctly filed liens in the name of "Hilda B. Wright, Executrix of the Estate of Barbara Hahn, deceased," but for the years 1943 to 1946, inclusive, they incorrectly filed

their liens in the name of "Hilda B. Wright, owner or reputed owners." All of the tax liens filed by County of Allegheny were incorrectly filed in the name of "Hilda B. Wright, owner or reputed owner."

In 1948 the County of Allegheny issued a scire facias sur tax lien naming Hilda B. Wright as owner or reputed owner of the property. Since she filed no appearance, judgment was entered, a writ of levari facias followed in due course, and a Sheriff's Deed dated October 2, 1948 conferred title on the County of Allegheny, the City of Pittsburgh and the School District of Pittsburgh. The Director of the Department of Lands and Buildings of the City of Pittsburgh took control of the properties as agent for the taxing bodies and leased it to various tenants during the period from November 13, 1948 to October 31, 1958.

When the board of viewers awarded $7500 damages, as heretofore mentioned, Hilda Wright and the eleven other heirs of Barbara Hahn petitioned for distribution in accordance with their respective claims. They claimed they were entitled to the money as owners of the condemned property, asserting that the tax foreclosure proceedings had been illegal and invalid since they were based on invalid assessments and therefore passed no title to the taxing authorities.

On May 5, 1960, a rule issued to the taxing bodies to show cause why the money should not be distributed as prayed for. Answer being filed, the court below, after hearing argument in the matter, entered judgment in favor of the petitioners. This appeal followed.

Neither the City of Pittsburgh nor the County of Allegheny controvert the conclusions of the court below that (1) the assessments were improper, since they were not made in the name of the registered owner,* and (2) that the Sheriff's sale to the taxing authorities

---

* *Litmans v. O'Donnell*, 173 Pa. Superior Ct. 570.

was void since the registered owner was not named in the foreclosure proceeding. As stated in *Carratelli v. Castrodale*, 185 Pa. Superior Ct. 426, 429: " 'If there be no valid assessment, the tax sale is void, and no interest passes to the county as a result thereof: Hunter v. McKlveen, 361 Pa. 479, 65 A. 2d 366.' "

In *Scranton v. O'Malley Mfg. Co.*, 341 Pa. 200, 207, we said: "That statute cured mere formal irregularities in the assessments, process, and other proceedings in sales by county treasurers, but was held not to cure jurisdictional defects and vital irregularities."

The City of Pittsburgh admits that the liens in question were defective and not regularly revived, but contends that the taxing authorities should be permitted to amend so as to cure the affliction and thus revive the tax charges on the land.

Whatever may have been the amending rights prior to condemnation of the property, they were lost after the condemnation. To hold, as a matter of law, that the distribution of the fund here in question can be determined by events subsequent to the date of condemnation would lead to chaos and an unsettled state of title. In the case of *Hunter v. McKlveen*, 361 Pa. 479, 482, the Secretary of Highways approved a map in which specific boundaries for a right of way of the Turnpike through Westmoreland County were fixed and, as a result, 61.3 acres of land belonging to Blairs was condemned, the amount of $16,400 being awarded in damages. A dispute arose as to the identity of the beneficiary of the award. This Court said: "The question determinative of this case is: Who was the owner of that property *at the time of its condemnation*? That in turn depends upon whether the tax sale validly passed title to the county and if so whether the Blairs redeemed the land in accordance with the Tax Abatement Act of 1938 . . ." (Emphasis supplied.)

In the instant case the City of Pittsburgh contends that the heirs of Barbara Hahn should be estopped from opposing amendment of the liens since they failed to make timely objection to the assessments and the sale. In the first place, the taxing bodies have not even up to this date attempted to amend the liens. In the second place, if the contention of the appellants were to be accepted as sound, it would mean placing on taxpayers the onus of searching for, locating, and correcting errors of the taxing authorities, and, at the same time, it would permit taxing authorities to escape the mandatory requirements of taxing statutes. It does not require much exposition to put into clear focus the proposition that a registered owner of property who has not received notice of assessments and tax sale based thereon, as required by law, should not be penalized for failing to make timely objection to something of which he is factually and legally ignorant.

The County of Allegheny argues that it would be inequitable to permit the plaintiffs to obtain a benefit which has come into being as a result of their own laches. But this is not the case for application of the common law principle of unjust enrichment. We are concerned here with the manner in which the taxing bodies have assessed taxes.

It is true that taxes are the lifeblood of any government, but it cannot be overlooked that that blood is taken from the arteries of the taxpayers and, therefore, the transfusion is not to be accomplished except in accordance with the scientific methods specifically prescribed by the sovereign power of the State, the Legislature. In *Scranton v. O'Malley Mfg. Co.*, supra, 341 Pa. 204, 206, we said: "Liability to pay taxes arises from no contractual relation between the taxable and the state and cannot be enforced by common law proceedings unless a statute so provides. *They can be collected in no other way than that provided by the statute*: Schmuck

v. Hartman, 222 Pa. 190, 195, 70 A. 1091; Leopold Tax Assessment Case, 118 Pa. Superior Ct. 158, 163, 179 A. 904. Tax statutes should receive a strict construction: Boyd v. Hood, 57 Pa. 98. *In cases of doubt the construction should be against the government*: Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53; U. S. v. Merriam, 263 U.S. 179, 188, 44 S. Ct. 69; Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A. 455. While it is the duty of every citizen to bear his just share in supporting the government, *he cannot be compelled to do so except in a way provided by a statute.* This gives rise to a rule in tax law, of general application, that whatever the law requires to be done for the protection of the taxpayer is usually mandatory and cannot be regarded as merely directory: Black on Tax Titles, §198. . . . There are some jurisdictions where the courts, in dealing with similar provisions for tax sales, have held that only substantial compliance with the statutory requirements is demanded. *In this state and in most other jurisdictions the officers entrusted with such duties, when acting outside the course of the common law, are held to a strict performance."*

The County would sum up the position of the petitioners in the following words: "The position of the petitioners is that they want the proceeds of the sale of the property without being bound for payment of obligations, including taxes, which would have been due had they been in possession of the property. That is certainly a prime example of having your cake and eating it too."

But we are not here confronted with a question of the moral duty of the heirs to pay the controverted taxes but whether they can be compelled to pay taxes not assessed in accordance with law. Taxes are indeed the millstream which turn the wheels which create the wheat and eventually the bread or the cake referred to by the appellant County but, it must be repeated that

neither the Commonwealth, nor any of its subdivisions may exact taxes except in the precise manner designated by statute. This incontestable principle of law was emphasized in the case of *Schmuck v. Hartman,* 222 Pa. 190, 195, 197 : "The appellee has undoubtedly withheld from the commonwealth a large sum which he ought to have paid for taxes, and his moral duty unquestionably now is to pay it, but he cannot be compelled to perform that duty unless there is a right in the commonwealth to enforce it as a legal one. All taxation is statutory, and, while it is the duty of every citizen to bear his just proportion of the burden of supporting national, state and local government, he cannot be compelled to do so except in a way provided by a statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. *They can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute.* Are the assessments and reassessments made by the appellants sanctioned by any statute? If they are not, they are void . . .

"From 1885 to 1907 the appellee regularly made returns to the assessors. For these assessments, upon which he paid taxes each year, the appellants would now substitute reassessments as a basis for the collection by the commonwealth of a large sum of money from the appellee. For this extraordinary proceeding they must point to some statutory authority, for it can exist nowhere else. It is no answer that the appellee defrauded the state and ought now to be compelled to pay, for, whatever may be the moral aspect of the case, it is his right when, at this late day, the appellants would impose taxes upon him, which, if ever due, ought to have been imposed years ago, *to ask for and be shown the statute under which they would now compel him to*

*pay . . .* Taxation is purely for the legislature. *The judiciary can enforce it only as the legislature directs it to be enforced.* For cases like the present additional legislation is manifestly needed, but, until it is enacted, the commonwealth must submit." (Emphasis supplied.)

To permit a recovery of the taxes claimed by the taxing authorities in the case at bar would be tantamount to a judicial revision of the tax laws which clearly set forth the manner in which assessments and tax sales are to be made.

We therefore hold that the heirs of Barbara Hahn are entitled to the damages awarded by the Board of Viewers, for as we concluded in *Hunter. v. McKlveen,* supra: "Since, for the above reasons, the attempted tax sale was of no effect, title at all times remained in the Blairs and they alone are entitled to the damages for the appropriation of land by the Turnpike Commission. In this view of the case, it is unnecessary to discuss the other questions raised by appellant.".

Order affirmed; each party to bear own costs.