## Radnor Township School District v. Valley Forge Military Academy Foundation

*Louis J. Goffman* and *Alan J. Davis,* for plaintiff.
*J. H. Ward Hinkson,* for defendant.

DIGGINS, P. J., September 19, 1970.—Plaintiff, the School District of Radnor Township, commenced the instant action in assumpsit against defendant, Valley Forge Military Academy Foundation, seeking the recovery of a payment in the approximate amount of $49,400 pursuant to the provisions of a written agreement between the parties executed on May 14, 1945. Plaintiff characterizes the payment sought as one "in lieu of taxes"; defendant, on the other hand, contends that the payment sought, in fact, represents real estate taxes. The parties, by written stipulation, agreed that the matter be tried by a judge sitting without a jury. The trial was held on May 27, 1970, at which time testimony and evidence were received by the court. By virtue of the significant nature of the issues here involved, briefs and suggested finding were indicated, and it was determined that a formal decision would be rendered in the form contained herein. The matter is now ripe for determination.

### FINDINGS OF FACT

1. Plaintiff is a school district of the third class

constituted under the Public School Code of March 10, 1949, P. L. 30, as amended 24 PS §1-101, et seq.

2. Defendant is a nonprofit corporation organized under the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS §7001, et seq.

3. Plaintiff is a local taxing authority under the Public School Code of March 10, 1949, art. VI, sec. 602, 24 PS §6-602 and art. VI, sec. 672, as amended, 24 PS §6-672.

4. Defendant operates a private military school for young men, known as the Valley Forge Military Academy, which is located on land owned by defendant, partially situate within the School District of Radnor Township.

5. On October 25, 1944, defendant's incorporators filed in this court, to September term, 1944, no. 277, an application for a nonprofit corporation charter.

6. Defendant's application for a charter was in the customary standard form contemplated by the Nonprofit Corporation Law then effective.

7. On November 17, 1944, plaintiff filed exceptions to the application on the ground, inter alia, that the proposed corporation would not function in accordance with the laws of the Commonwealth governing nonprofit corporations. On the same day, exceptions were also filed by the Township of Radnor, the School District of Tredyffrin Township and the Board of Road Supervisors of Tredyffrin Township.

8. Subsequent to the filing of the exceptions, representatives of plaintiff and defendant entered into negotiations with a view toward resolving the matter amicably.

9. Defendant's incorporators were informed by counsel for plaintiff that the exceptions would not be pressed, but would be withdrawn, if defendant's incorporators would "agree to continue to be liable for taxes

on (its) real estate in the event it is ever found to be tax exempt by law."

10. On January 11, 1945, an agreement was made by and between the incorporators of the proposed non-profit corporation, the Township of Radnor, the School District of Radnor Township, the School District of Tredyffrin Township and the Board of Road Supervisors of Tredyffrin Township under which each of the municipalities agreed to withdraw the exceptions filed to the application, and the incorporators agreed to enter into a subsequent agreement with the municipalities under the terms of which, in the event that the real estate owned by the corporation became exempt from taxation, the corporation would nonetheless continue to make annual payments "in lieu of taxes," the amount of which payments would be based upon the taxes which would have ordinarily been due had there been no exemption.

11. On January 30, 1945, the exceptions filed to defendant's charter application were withdrawn; and, on April 20, 1945, the master filed his report recommending that defendant be chartered as a nonprofit corporation, and the court approved the application for charter as filed.

12. On May 14, 1945, in accordance with the agreement made on January 11, 1945, an agreement was made by, between and among the defendant, the plaintiff, the School District of Tredyffrin Township and the Board of Road Supervisors of Tredyffrin Township, under which defendant agreed that if at any time any of the real estate now or hereafter owned by it became exempt from the payment of real estate taxes, the corporation would pay to the taxing body entitled to receive the taxes, on or before October 1st of each year, an annual payment "in lieu of taxes" which payment would be equal to the amount of taxes

which would have been payable upon such real estate had same not been exempt.

13. In September 1945, an agreement was made by which the parties amended the agreement of May 14, 1945, in certain respects, including the computation of the amount of the payment to be made "in lieu of taxes," but in all other respects ratified and confirmed said agreement.

14. On October 29, 1964, the Board for the Assessment and Revision of Taxes of Delaware County granted to defendant an exemption from the payment of real estate taxes on the ground that defendant qualified as an institution of learning under the Act of May 22, 1933, P. L. 853, art. II, sec. 204, as amended, 72 PS §5020.204(c).

15. Other "institutions of learning" in the Township of Radnor are accorded a totally tax-exempt status by plaintiff.

16. Prior to October 1, 1969, defendant made to plaintiff each payment under the agreement dated May 14, 1945, as amended.

17. Despite demand by plaintiff, defendant has refused to make the payment "in lieu of taxes" in the amount of $49,392 which became due pursuant to the terms of the aforesaid agreement on October 1, 1969.

## DISCUSSION

Prior to October 24, 1944, the Valley Forge Military Academy, whose property is situate partially in Delaware and Chester Counties, was owned and operated by a Pennsylvania business corporation. On the aforesaid date, defendant, Valley Forge Military Academy Foundation (herein referred to as "foundation") sought a nonprofit corporate charter for purposes of "the advancement of learning and the education of youth" as well as the acquisition, maintenance and operation

of the Valley Forge Military Academy. Exceptions to this application were filed by the plaintiff and other taxing districts. Negotiations thereafter ensued and, ultimately, the exceptions were withdrawn, and the foundation was chartered as a nonprofit corporation. On May 14, 1945, in accordance with an agreement entered into between and among defendant and the municipal taxing bodies on January 11, 1945, a written agreement was executed between and among the same parties which provided, inter alia, as follows:

"If at any time any of the real estate now or hereafter owned by it within the boundaries of either Radnor Township or Tredyffrin Township is exempt from the payment of any or all of the real estate taxes to which the same would be ordinarily subjected, the corporation will pay to the taxing body entitled to receive the same on or before the first day of October of each and every year thereafter an annual payment in lieu of taxes which payment shall be equal to the amount of taxes which would have been payable upon said real estate had the same not been exempted."

The aforesaid agreement constitutes the basis for the present action.

Subsequent to its incorporation and through 1964, the foundation made payments to the various taxing authorities in accordance with the terms of the aforesaid agreement. However, in October of 1964, the Board for the Assessment and Revision of Taxes of Delaware County granted to the foundation commencing in 1965, an exemption from the payment of real estate taxes on the ground that the foundation qualified as an institution of learning. Plaintiff did not challenge this finding, relying on the aforesaid agreement of May 14, 1945. Between 1965 and October 1, 1968, the foundation continued to make payments to the various taxing authorities in accordance with the

terms of the aforesaid agreement. However, in 1969, the foundation made payments to Tredyffrin and Radnor Townships but refused to make any payment to the plaintiff, School District of Radnor Township.[1] In this regard, the foundation contends that its ability to carry on its operation has been seriously jeopardized by virtue of increases, over the years, in the amount of the payments made to plaintiff, the amount having been $2,188.43 in 1945 and $49,392 in 1969.

The basic issue to be resolved herein is whether or not a taxing body has the power and authority to collect, by contract, the payment of taxes from one whose property is exempt therefrom by express statutory provision. The trial judge is of the opinion, for the reasons hereinafter set forth, that such a contract is unenforceable, illegal and invalid.

At the outset, it is necessary to definitively establish the character of the payments made, over the years, by the foundation to the School District of Radnor Township. As aforesaid, the school district characterizes the payment as being "in lieu of taxes"; the foundation contends that the payments constitute, in fact, the payment of real estate taxes. The undersigned concludes that the foundation's position is correct. The annual payments were computed, calculated, billed and discounted precisely as though: (1) taxes were involved; and (2) the foundation's properties were not by law exempt from liability for the payment of such taxes. Indeed, it would be difficult to achieve any other conclusion. Thus, the agreement of 1945 was intended

---

[1] In October of 1969, defendant entered into an agreement with Radnor Township wherein defendant agreed to continue to make payments to the said township "in lieu of taxes" for municipal services rendered in an amount less than as provided in the 1945 agreement.

to serve as a waiver of any exemptions or immunity from the payment of real estate taxes which might be accorded to the foundation in the future.

Liability for the payment of taxes in Pennsylvania arises not by reason of a contractual relationship between the taxing body and the taxable, but strictly by operation of law, and the law is well established that taxes can be collected only as provided by statute. See Urban Redevelopment Condemnation Case, 406 Pa. 6. Moreover, pursuant to the Constitution of Pennsylvania, the power to determine which property shall be subject to taxation and which shall be exempt therefrom is, subject to certain limitations, vested exclusively in the General Assembly: Southwest Delaware County Municipal Authority v. Aston Township, 413 Pa. 526, and Commonwealth of Pennsylvania State Employes' Retirement System v. Dauphin County, 335 Pa. 177. Further, our whole system of taxation is purely statutory, and no local taxing body has any power with respect to taxes except as conferred by statute: Central Pennsylvania Lumber Company's Appeal, 232 Pa. 191.

In light of the aforesaid legal principles, it follows that plaintiff school district is without power or authority to collect real estate taxes, by contract, from the foundation which is now exempt and immune therefrom as a charitable institution of learning, having so qualified pursuant to the provisions of the General County Assessment Law of 1933, supra, 72 PS §5020-204(c). Nor may plaintiff refuse to recognize or interfere with the said immunity, since a contrary result would negate the basic intent of the statute and would amount to a judicial revision thereof.

In addition, plaintiff's action must fail for equally significant reasons of policy. It is the opinion of the undersigned that the subject agreement is contrary

to public policy and, therefore, void. Such an arrangement if sustained would lead inevitably to much abuse, since both the subjects of tax exemption and the power to collect taxes would be replaced, in given instances, by negotiation, barter and contract. In one instance, by contract, tax exemption might be denied where otherwise warranted (as here); in another instance, by contract, tax exemption might be granted where unwarranted (with a resultant loss of tax revenues). Such is not the intendment of the law. One can certainly achieve an amicable settlement with an antagonist in litigation and exact a quid pro quo in connection therewith. However, in a controversy between a corporate citizen and a taxing body, it is a situation fraught with danger to place the stamp of approval on an arrangement which leads to a party (such as a taxing body) selling or bartering its right, duty and obligation to bear witness in opposition to the status sought. This right, duty and obligation is not a commodity which can or should be the subject of barter. Further, the legislature as a matter of policy has sought, by statutory exemption from taxes, to foster the establishment, development and expansion of institutions of learning. A result contrary to that herein reached would thwart this policy.

The conclusion hereinabove achieved is supported by analogous case authority. In Assessors of Dover v. Dominican Fathers Province of St. Joseph, 334 Mass. 530, 137 N.E. 2d 225, the court determined that no binding contract had been consummated between the taxing body and the Dominican Fathers, allegedly to the effect that the Order, in consideration of the granting of a variance, had agreed to pay taxes on 70 of 78 acres; however, the court appositely stated, at page 229 of 137 N.E. 2d:

"We find no basis in these negotiations for a vari-

ance for treating the transaction as a contract which would in any way affect the rights of the taxpayer, under the taxing statutes. But even if these negotiations could be tortured into a contract we are of opinion that it would not be valid. The zoning and taxing statutes are separate and distinct, and each is separately administered. A property owner may or may not be entitled to a variance. Many factors have to be considered. But those relating to the subject of taxation and exemptions have no relevancy. If a board of appeals upon consideration of the relevant factors concludes that a property owner is entitled to a variance it should grant it. It has no right in doing so to attach conditions by contract or otherwise touching the subject of taxes or exemptions. Those are matters outside its jurisdiction. Moreover, what property is taxable and what is exempt is a subject covered by laws which are and must be general in their operation. They cannot be varied by a contract between the town and the taxpayer. Southborough v. Boston & Worcester Street Railway Co., 250 Mass. 234, 239, 143 N.E. 422; Waltham Watch & Clock Co. v. Waltham, 272 Mass. 396, 412, [172 N.E. 579]."

Inhabitants of Southborough v. Boston & Worcester Street Railway Company, 250 Mass. 234, 145 N.E. 422, is also pertinent. In that case, an agreement was entered into in 1902 between the taxing body and the defendant railway whereby in return for the granting of locations, a stipulated sum of money, determined by a formula, was to be paid annually by the defendant railway; part of the annual payment included an excise tax then prescribed by statute. Payments were made annually until the year 1919 at which time the legislature repealed the excise tax. Thereafter the defendant refused to continue to make

the payments. In striking down the agreement, the court stated at page 424:

"Whatever else may be said about the practical interpretation by the parties of the contract and location as to this payment during the years from 1904 to 1920, it is plain that it was treated as a substitute for the excise tax and that, so long as that excise exceeded $900, neither party was concerned about the contract or location on this point. The conduct of the parties in interpreting the contract confirms the idea that it was intended as a substitute for the excise tax. Such conduct is entitled to some weight in ascertaining the nature of the payment. Nash v. Webber, 204 Mass. 419, 424 [90 N.E. 872]; Gallagher v. Murphy, 221 Mass. 363, 365, [108 N.E. 1081, Ann. As. 1917E, 594]; Crowe v. Bixby, 237 Mass. 249, 253, [129 N.E. 433]; Rome v. Gaunt, 246 Mass. 82, 93, [140 N.E. 242]. That conduct fortifies the natural inference to be drawn from the words used.

"What the parties attempted to do was to make an additional and supplemental provision respecting the excise tax. Taxation is a function of the general legislative department of government. The laws established by it cannot be waived or changed by municipalities or their officers. Such laws are and must be general in their operation. When the Legislature has covered the whole subject, there is no room for the exercise of authority by local officers. The town has no power to make a contract concerning that subject. Cox v. Segee, 206 Mass. 380 [92 N.E. 620]. Gile v. Perkins, 207 Mass. 172 [93 N.E. 586]. Boston Rubber Shoe Co. v. Malden, 216 Mass. 508 [104 N.E. 478], and cases there collected. Parsons v. Lenox, 228 Mass. 231, 235 [117 N.E. 197].

". . .

"There are many instances where, before or at the time of the exercise of the quasi judicial faculty by boards of public officers in laying out, altering or relocating public ways, contracts have been made with the municipality touching the expense of laying out, alteration or relocation of a highway whereby private individuals have contracted with the municipality to bear the whole or a part of such expense. In some instances payments or other arrangements have been made to relieve or lighten the expense to the city or town. Such contracts, payments or other arrangements have always been held valid and enforceable. Parks v. Mayor & Aldermen of Boston, 8 Pick. 218 [19 Am. Dec. 322]. Freetown v. County Commissioners of Bristol, 9 Pick. 46. Jones v. Andover, 9 Pick. 146, 153, 154. Copeland v. Packard, 16 Pick. 217. Crocket v. Boston, 5 Cush. 182. Atkinson v. City Council of Newton, 169 Mass. 240 [47 N.E. 1029]. Brookfield v. Reed, 152 Mass. 568 [26 N.E. 138]. Aspinwall v. Boston, 191 Mass. 441, 445 [78 N.E. 103]. Estes v. Newton, 241 Mass. 229, 232 [136 N.E. 643]. See Nevins v. City Council of Springfield, 227 Mass. 538, 542 [116 N.E. 881]. Compare West Springfield & Agawam Street Railway v. Bodurtha, 181 Mass. 583 [64 N.E. 414]. Such cases, however, rest upon a different principle and have no bearing upon the case at bar. They have no relation to the tax laws, although they may indirectly affect municipal revenues."[2]

In Re: Appeal of Shenango Inc., 114 Pitts. L.J. 399, is most analogous to the instant case. There, an amendatory act, the Act of July 16, 1957, P. L. 954, 72 PS §5020.201, which provided for the exemption of

[2] Significantly, as here, the court distinguished between contracts made with a municipality concerning payment for expenses relating to the supply of needed services, etc., on one hand, and contracts dealing with the payment of taxes on the other hand.

machinery in manufacturing plants, was involved. Factually, Shenango's predecessor in title had expressly waived the exemption benefits to which it was entitled under the aforesaid act in consideration of receiving an off-setting reduction in the assessment of new plant buildings if and when constructed. Although the court concluded that Shenango was not bound by the waiver given by its predecessor in title, the court devoted its primary attention to the issue of whether or not the local board of assessment had the power to accept and act upon the aforesaid waiver. In an excellently reasoned opinion, the court resolved the issues in favor of the property owner on two basic grounds, viz.: (1) that the payment of taxes, or exemption therefrom, is determined by statute, and (2) that the decision of the board of assessment was violative of both Pennsylvania and Federal Constitutions. The court pertinently stated, at pages 410-16:

"Subject to limitations imposed by the Pennsylvania Constitution, it is well settled that the power to tax vests exclusively in the Legislature. Sharpless v. Mayor of Philadelphia, 21 Pa. 147, pp. 167, 168 (1853); Commonwealth of Pa. State Employees Retirement System v. Dauphin County, 335 Pa. 177, 179, 180 (1939) Southwest Delaware County Municipal Authority v. Aston Township, supra.

"It is the Legislature which determines within the limits of the Constitution what property shall be subject to taxation and assessment, and what shall be immune. Southwest Delaware County Municipal Authority v. Aston Township, supra.

"It is true that the Legislature may delegate the taxing power, but the authority so conferred must be strictly construed and not extended by implication. Philadelphia School District v. Frankford Grocery Co., 376 Pa. 542, 549 (1954).

"The Board, an administrative body, cannot usurp the law-making power entrusted to the Legislature, but is limited to delegated powers to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Locke's Appeal, 72 Pa. 491, 498 (1872).

". . .

"The letter of July 9, 1958 from Pittsburgh Coke & Chemical Company to the Board is no substitute for a requisite statute conferring the power on the Board to assess and tax machinery and equipment. All taxation is statutory and liability to pay taxes arises from no contractual relation between the taxpayer and the taxing body. Urban Redevelopment Condemnation Case, 406 Pa. 6, 11 (1961). This case further provides (p. 13):

"They [taxes] can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute."

"This is not a novel legal proposition, for as early as 1869 the Supreme Court, in Durach's Appeal, 62 Pa. 491, 494 held that the selection of the objects for taxation and method of collection are legislative matters.

". . .

"By its decisions denying those same benefits to Shenango the Board has caused Shenango to be deprived of its rights under Article 9, Sec. 1 of the Pennsylvania Constitution. The section, known as the 'Uniformity Clause,' provides that all taxes must be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. This provision required assessments to be made and taxes to be imposed in a similar manner on similar kinds of property. Saulsbury v. Bethleman [sic] Steel Co.,

413 Pa. 316, 319 (1964); Deitch Company v. Bd. of Property Assessment, etc., supra.

"The Board may not exclude the machinery of other property owners from assessment, and deny the exclusion to Shenango. The letter of July 9, 1958, signed by Pittsburgh Coke & Chemical Company, has no effect on the constitutional rights of Shenango to deprive it of protection under Article 9, Sec. 1 of the Pennsylvania Constitution, for Shenango is a separate and unrelated corporation. Law v. Mayor and City Council of Baltimore, et al., 78 F. Supp. 346, D. Md. (1948).

The Board also has acted in the instant case so as to deprive Shenango of the equal protection of the law as provided for in Article 14, Sec. 1 of our Federal Constitution, which is directed solely to the States. In this regard we quote from the opinion of this Court in McCandless Township Sanitary Authority v Rupert, Jr., 112 P.L.J. 463, pp 464, 465 as follows:

" 'The equal protection clause extends to all functions of a public nature carried on by municipalities or other subdivisions of a state, as well as to the state government itself. Article III, Section 7 of our Pennsylvania Constitution is interpreted to provide essentially similar individual protection. . . . The equal protection clause has long prohibited the state governments or their duly authorized subdivisions from passing laws of an arbitrary or discriminatory character. *It is also deemed to protect the individual against unreasonable and unjust enforcement of laws unquestionably valid in themselve.* (Emphasis ours)

"In Iowa-Des Moines Bank v Bennett, 284 U.S. 239, 246 (1931) the Court stated:

" 'When a state official, acting under color of state authority invades, in the course of his duties, a private right secured by the federal Constitution, that right is

violated even if the state officer not only exceeded his authority but disregarded special commands of the state law . . .' "

"In Cooper v. Aaron, 358 U.S. 1, 19 (1958) the Court stated:

" 'Thus the prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action . . .' "

"See also Griffin v. State of Maryland, 378 U.S. 137 (1964)."[3]

In summary, the undersigned is of the opinion that an agreement to compensate a municipality for the rendering of services is valid, whereas an agreement to pay taxes which are not due or payable pursuant to statute is illegal, void and unenforceable.

Plaintiff school district contends that: (1) The subject agreement is valid and in furtherance of public policy; (2) the subject agreement was supported by ample consideration; (3) the uniformity clause of the Pennsylvania Constitution is inapplicable; and (4) a statutory or constitutional exemption from the payment of taxes may be waived. In support of these contentions, plaintiff has cited a myriad of case authority, and statutory and constitutional provisions. An analysis of the aforesaid, however, leads to the conclusion that they are inapposite for legal or factual reasons and, accordingly, do not govern or rule the instant case.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and the subject matter of this action.

---

[3] A number of other institutions of learning in Radnor Township are accorded a totally tax exempt status by plaintiff school district.

2. The agreement of May 14, 1945, is invalid, void, inoperative and unenforceable.

## DECISION

And now, to wit, September 17, 1970, upon consideration of the above matter, the court makes the following decision in writing:

1. We find in favor of defendant, Valley Forge Military Academy Foundation, and against plaintiff, School District of Radnor Township.

2. Plaintiff, School District of Radnor Township, shall pay the costs.

## ORDER

The prothonotary is directed to give notice immediately to the parties or to their attorneys of record of the filing of the foregoing decision and, if no exceptions be filed thereto within 30 days after the service of such notice, to enter judgment in accordance with such decision.