## Leopold Tax Assessment Case.

Argued April 17, 1935.

Before KELLER, P. J., CUNNINGHAM,

Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Wm. S. Rial,* with him *H. E. Marker,* for appellant.

*Goethe Faust,* with him *Morton Meyers,* of *Graham, Yost & Meyers,* for appellee.

Opinion by Parker, J., July 18, 1935:

Max Leopold, a resident of Westmoreland County, held and possessed taxable personal property during the years 1929 to 1932, inclusive, which he failed to report for taxation and no assessment was made against him for those years by the assessor of his district or other taxing authority prior to his death on January 2, 1934. His executors filed an inventory and appraisement of his estate and this was certified to the county commissioners, when steps were taken to enforce a tax liability against his estate for the years mentioned. The county and the executors were heard before the board of revision of taxes for the county on May 10, 1934, and that board, after hearing, fixed the value of the decedent's personal property for each year at the sum of $80,000, added thereto a penalty of fifty per cent of such value and, with the total as a basis, computed the tax to which interest was added at the rate of six per cent per annum. An appeal was taken to the court of common pleas of Westmoreland County and, after argument, that court corrected the assessment by eliminating the fifty per cent penalty and from that order the county has appealed to this court. The fiduciaries

concede the correctness of the value of $80,000 and the right of the county to collect interest on the tax computed upon that valuation, but deny the right of the county to impose the penalty of fifty per cent. This presents the sole question for our consideration.

The legislature, by Act of June 17, 1913, P. L. 507 (72 PS 4821), imposed a four-mill tax for county purposes on various classes of personal property owned, held, or possessed by persons within this Commonwealth. This act of assembly was a substitute for the Act of June 1, 1889, P. L. 420, an act similar in its scope except that the earlier act imposed the tax for state in place of county purposes. There had been previous legislation of a similar character, particularly the Act of June 30, 1885, P. L. 193, a supplement to the Act of June 7, 1879. Serious abuses arose in the administration of these tax acts, in that many persons who should have borne a fair share of the burden of taxation were able to avoid their responsibility by failing to make returns and such failure was not discovered within a time when the assessments could be corrected. In Williamson's Estate, 153 Pa. 508, 26 A. 246, Williamson failed to make any return of his personal property for the year 1888 when an assessment was made against him by the assessor of $45,000, to which a penalty was added. After his death it was discovered that he had personal property subject to taxation for that year amounting to $2,500,000, and the board of revision made an assessment against him with a penalty of fifty per cent. It was held by the Supreme Court that the second assessment was improper and void and that the city, having received the whole amount of the tax under the first assessment, could recover nothing more from the estate. This case was followed by Schmuck v. Hartman, 222 Pa. 190, 70 A. 1091, where it was again held that the taxing authorities could not, after the expiration of a year, make a valid assessment against the

taxpayer, the court there saying (p. 195) : "No act of assembly authorizes an assessment of a state tax on personal property after the expiration of the year in which it ought to have been assessed and the taxable ought to have paid it."

To correct these abuses, the present Act of 1913 was amended successively by the Act of May 31, 1923, P. L. 474, Act of May 13, 1927, P. L. 985, and the Act of June 12, 1931, P. L. 544. These amendments were intended to correct the abuses to which we have referred and enable the county to enforce liability on some who had not borne their fair share of taxation.

By the Act of 1913, the collectors of taxes in the various townships, boroughs, and cities of the Commonwealth were furnished with blanks which such collectors were required to furnish to the taxable persons in their districts and on which such taxables should return the property made subject to taxation by the act. Upon a refusal or a failure of any taxable person to make a return promptly, it was made the duty of the assessor to make a return for such taxable person when it became the duty of the county commissioners or board of revision of taxes to revise and correct the same according to the best information at their command and to add to such revised and corrected estimate fifty per centum, "and the aggregate amount so obtained shall be [was made] the basis for taxation," provided that "if such taxable person ...... on or before the day fixed for appeals from assessments, shall present reasons, supported by oath or affirmation, satisfactory to the proper county commissioners or board of revision of taxes, excusing a failure to make a return such as should be made to the assessors, and shall then make such return, the proper county commissioners or board of revision of taxes may substitute such return for that returned by the assessor" (72 PS 4844).

By the amendment of June 12, 1931, P. L. 544 (72

PS 4844) it was provided "that in cases where, by the refusal or failure of any taxable person ...... to make return, a return has been made by the assessor which is incomplete and a penalty has been added by the county commissioners or board of revision of taxes, or a return so made and no penalty added, or whereby such refusal or failure, no return has been made either by him or it or by the assessor, such action shall not estop the county commissioners or board of revision of taxes from the assessment and collection, from him or it or from the estate of any deceased person so failing or refusing, of any tax or additional tax due whenever the facts become known." It was then made the duty of the county commissioners or board of revision of taxes to assess or re-assess any such personal property for any former years not exceeding five years and "collect the tax or the balance of the tax which should have been paid, together with interest thereon at the rate of six per centum per annum." In ascertaining the balance found to be due no credit was to be given for any penalty formerly assessed and paid. It was then made the duty of the county commissioners or board of revision of taxes to re-assess and collect "the balance of the tax found to be due, together with interest at the rate of six per centum per annum." Executors and administrators were required to file two copies of their inventory and appraisement with the register of wills or clerk of the orphans' court and an affidavit in duplicate setting forth the items included in such inventory or affidavit which would have been liable to a tax during the last completed taxing year for county purposes. The officers were required to certify copies of such affidavit to the county commissioners or board of revision of taxes, and the counties were given authority to prosecute their claims against decedents' estates in either the orphans' court or by action at law in the court of common pleas.

The legislature has the undoubted right to impose

penalties for the nonpayment of taxes and to impose a penalty upon a taxpayer who improperly withholds information which the state is entitled to have as to the condition or extent of his estate: Appeal of Fox and Wife, 112 Pa. 337, 357, 4 A. 149. While it is the duty of every citizen to bear his just proportion of the burden of supporting the government, he cannot be compelled to do so except in a way provided by a statute. "Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. They can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute:" Schmuck v. Hartman, supra, p. 195. "Taxing statutes should receive a strict construction (Boyd v. Hood, 57 Pa. 98); the words should be clear and unambiguous (Com. v. Pennsylvania Water & Power Co., 271 Pa. 456, 458 [114 A. 489]); it is not enough to show that the absence of a tax works injustice (Callery's App., 272 Pa. 255, 257 [116 A. 222]); nor can the words be extended by implication; and in cases of doubt the construction should be against the government. Gould v. Gould, 245 U. S. 151, 153; United States v. Merriam, 263 U. S. 179, 188": Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A. 455.

Now it will be observed that the Act of 1913 set up a procedure for the assessment of this personal property tax which contemplated the initiation of the proceedings by an assessor with opportunity to the taxpayer to make a voluntary return and for further proceedings before the county commissioners and board for revision of taxes. By the amendments to which we have referred, there is another distinct procedure for collecting taxes from those who have theretofore escaped liability which is limited to a period of five years with the additional right to enforce collection either in the orphans'

court or by suit at law in any court of competent jurisdiction. In the latter case the amount which is authorized to be collected is "the balance of the tax which should have been paid together with interest thereon at the rate of six per centum per annum." If the legislature had intended, in granting this additional remedy to counties, to give them the right to exact penalties of both fifty per cent and interest, they would undoubtedly have said so in unambiguous words. On the contrary, all that is authorized to be collected is the amount which should have been paid with interest. It seems clear to us that the amount which should have been paid was the amount which would have been due after the taxpayer had made his return according to law and the tax had been assessed in the same way. As is pointed out by the court below in its opinion and by the appellees in their argument, the legislature evidently intentionally omitted the fifty per cent penalty in the amendments as they were careful to mention the fact that the taxpayer should not have any credit for any penalty assessed upon an inadequate assessment. By this additional legislation, another and separate remedy with different procedure was provided, and we can come to no other conclusion than that the legislature did not intend the fifty per cent penalty to apply where assessments were made after the year in which the tax should have been assessed or paid. The provision under the regular method of assessing such taxes also provided for the relief of the taxpayer from payment of a penalty under certain circumstances and no such provision is contained in the additional procedure. The tax authorities having failed to point to any statute which authorizes the imposition of this penalty under the procedure employed, it follows that the court below correctly decided the issue.

The order of the court below is affirmed at the costs of the appellant.