## City of Allentown v. Personal Finance Co. et al.

*Calvin E. Arner*, for plaintiff.
*Donald LaBarre* and *Morris Perkin*, for defendants.

IOBST, P. J., March 10, 1941.—This is an amicable action in assumpsit and case stated for the judgment of the court.

Defendants are engaged in the business of lending their own money to individuals in sums of $300 or less, under license from the Secretary of Banking and in accordance with the provisions of the Pennsylvania Small Loans Act of June 17, 1915, P. L. 1012, sec. 1, as amended by the Acts of June 4, 1919, P. L. 375, sec. 1, and May 28, 1937, P. L. 989, sec. 1, 7 PS §751. They are engaged in no other business. The legislature, by the Act of June 27, 1913, P. L. 568, art. V, sec. 3, cl. 4, as amended by the Act of May 27, 1919, P. L. 310, authorized cities of the third class to levy and collect a license tax, not exceeding $100, each, annually, for general revenue purposes on auctioneers and other specifically-named occupations and businesses. These acts were repealed and replaced by that portion of The Third Class City Law of June 23, 1931, P. L. 932, art. XXVI, sec. 2601, as amended, 53 PS §12198-2601, which provides:

"Council may, by ordinance, levy and collect a license tax for general revenue purposes, not exceeding one hundred dollars each, annually, on all photographers, auctioneers, . . . bankers, brokers, other than real estate brokers . . . pawnbrokers, . . . "

The occupations and businesses specifically enumerated, upon which third-class cities were authorized to levy and collect a license tax, were, insofar as it is material to this case, substantially the same in the earlier acts as in the later act. Pursuant to this legislative authority, the City of Allentown on September 8, 1933, amended an ordinance effective April 12, 1920. The ordinance of 1933, as far as is material here, provided as follows:

"Section 1. That there is hereby levied annually upon all persons, firms and corporations engaged in any trade, business, calling or occupation, matter or thing within the City of Allentown, Pennsylvania, a license tax as hereinafter provided, and any and all persons, firms and corporations engaged in the purchasing and selling of any goods, wares or merchandise whatsoever and doing business in the City of Allentown shall be classified and pay an annual tax as follows: . . .

"Section 2. Street railway companies shall pay an annual license of $25 for each car, $5 for each mile of wire and $1 for each pole, and the following shall pay the amounts specified: auctioneers $50, brokers (stock and bond) $50, pawnbrokers $50, all other brokers and commission merchants $25, loan companies $50."

The ordinance further enumerates many other businesses and occupations, which it is conceded do not apply to the defendants. Prior to 1939 no attempt was made by the city to levy and collect a license tax from defendants, or other small loan companies.

In the case stated the city admits that it has no authority or right to impose a license tax on loan companies unless loan companies fall within the provisions of the aforesaid statutes and ordinances. The following questions are, therefore, submitted for the determination of the court: 1. Whether defendants, loan companies, fall within the meaning of the word "brokers" or within any other classification or classifications contained in the enabling acts of assembly, thus enabling

plaintiff, a city of the third class, to impose by ordinance a license tax of $50 per year upon defendants? 2. If the court should be of the opinion that defendants, small loan companies, who lend their own money to the public, are brokers within the meaning of the enabling acts referred to, or fall within any of the classifications contained in said acts, then the court shall enter separate judgments in the amount of the license tax for the year 1939, plus penalties and interest, against each of the defendants. If the court is of the opinion that defendants are not brokers within the meaning of said acts, then the court shall enter judgment in favor of the defendants. The costs to follow judgment.

"Subject to constitutional limitations, the elementary premise is that the power to tax vests exclusively in the legislature; it may by express direction delegate segments of the taxing power to municipal bodies, whose exercise thereof is confined to the power so delegated. This was fully discussed in *Wilson et ux. v. Philadelphia School Dist. et al.*, 328 Pa. 225 at 229. The power, therefore, to determine what property [business or profession] shall be subject to taxation and what shall be immune is traditionally within the province of the General Assembly. *Mott et al. v. Pennsylvania Railroad Co. et al.*, 30 Pa. 9, 28-29": Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County et al., 335 Pa. 177, 179. In 3 McQuillen on Municipal Corporations (2d ed.) §1087, it is said (p. 451) :

"As the power to tax and license as a means of raising revenue is not inherent in municipal corporations, it follows that such power must be expressly conferred in plain terms, or it must arise by necessary implication from powers expressly granted. The exercise of the authority must be within the clear scope of the language of the law conferring the power. Grants of this nature are usually strictly construed against the exercise of the power and in favor of the public, espe-

cially where the sole purpose of the ordinance is to raise revenue." Section 1088 provides: "The rule frequently invoked is that where power is given to enact ordinances in certain cases and for certain purposes, the power will be limited to the cases and objects specified, all others being excluded by implication".

Our appellate courts have said that "Taxing statutes should receive a strict construction": Boyd et al. v. Hood et al., 57 Pa. 98; ". . . the words of the statute must be clear and unambiguous": Commonwealth v. Pennsylvania Water & Power Co., 271 Pa. 456, 458; ". . . it is not enough to show that the absence of a tax works an injustice . . .": Callery's Appeal, 272 Pa. 255, 257; ". . . nor can the words be extended by implication; and in cases of doubt the construction should be against the government: Gould v. Gould, 245 U. S. 151, 153; United States v. Merriam, 263 U. S. 179, 188": Commonwealth v. P. R. T. Co., 287 Pa. 190, 196. These cases are cited in Leopold Tax Assessment Case, 118 Pa. Superior Ct. 158, at page 163. In Commonwealth v. P. R. T. Co., supra, the court says:

"The power to impose a tax is given by statute, and an act relating thereto embraces such subjects only as are plainly within its terms. In other words, a tax law cannot be extended by construction to things not described as the subject of taxation".

As has been indicated, the acts of assembly under discussion do not contain authorization to impose a license tax on all businesses or occupations. The statutes here involved specifially enumerate the businesses, trades, and occupations upon which a license tax may be levied and collected by third-class cities. The question to be determined is whether a loan company is a "banker", a "broker", or a "pawnbroker". Unless it comes within the category of either one of these the city has no authority to impose a license tax.

It was not the intent of the legislature to class small loan companies as "bankers" or "pawnbrokers" for in

the act creating them the legislation specifically provides that it shall not apply to banks, banks and trust companies, trust companies, private banks, savings banks, National banks or pawnbrokers: Small Loans Act, as amended by the Act of May 28, 1937, P. L. 989, sec. 2, 7 PS §760.

The question then has narrowed down to whether these loan companies can be placed in the category of "brokers", as that word is used in the enabling acts. It should be recognized that in cases of this nature courts will give to words used in a statute the plain meaning of long and familiar and accepted usage.

Webster's New International Dictionary defines the word "broker" as one who for a commission or fee brings parties together and assists in negotiating contracts between them: A dealer in money, notes, bills of exchange, commodities, contracts, etc., usually with a qualifier, as in "bill broker", "exchange broker", "insurance broker", "cotton broker", "hotel broker", "mortgage broker".

In 9 C. J. 508, 509, we find the word defined as "one who is engaged for others on a commission negotiating contracts relative to property with the custody of which he has no concern; an agent employed to make bargains . . . in matters of trade, commerce, and navigation for a compensation commonly called brokerage. A person is not a broker . . . who transacts business, not for some other party, but for himself".

In the instant case defendants lend their own money to the public. In Keys v. Johnson, 68 Pa. 42, the court defines brokers as persons whose business it is to bring buyer and seller together; and in Hamberger v. Marcus, Corr's Appeal, 157 Pa. 133, at p. 138, the court states that "The term 'broker' in its largest sense is applied to a specialist who acts as the medium of negotiating and contracting any kind of bargain. Thus

there are ship brokers, insurance brokers, real estate brokers, etc."

We, therefore, conclude that small loan companies as constituted under the enabling acts are not brokers.

This conclusion makes disposition of the case.

### Decree

Now, March 10, 1941, judgment is hereby entered in favor of defendants and against plaintiff. Plaintiff is to pay the costs.