## Batteiger Estate

*Richard Reifsnyder*, for accountants.

*Theodore O. Rogers*, for claimant.

MacElree, P. J., October 9, 1961.—There are no exceptions to this account other than a claim asserted

on behalf of the personal property tax bureau of Chester County, being in the amount of $171.30, hereinafter discussed, and dismissed. . . .

In connection with the claim above-captioned, the following stipulation of counsel has been filed:

"NOW, this 6th day of July, 1961, it is hereby stipulated in connection with the foregoing matter that:

"1. Rufus L. Batteiger who died June 29, 1958 was a resident of Coatesville, Chester County, for the five years prior to his death, specifically the years 1954 through 1958, inclusive.

"2. The said Rufus L. Batteiger made no return for personal property tax purposes for the years 1954 through 1958 nor did he pay such tax for any of those years.

"3. The actual value of the personal property of Rufus L. Batteiger taxable by Chester County for personal property tax for the said five years prior to his death was:

| | |
|------|------------|
| 1958 | $74,684.25 |
| 1957 | 76,542.63 |
| 1956 | 73,749.25 |
| 1955 | 43,212.38 |
| 1954 | 41,192.00 |

"4. On November 27, 1959 Katherine B. Fitzgerald, William B. Batteiger and William R. Spofford, Executors of the Estate of Rufus L. Batteiger, paid $1,436.19 to Chester County representing the personal property tax due for the years 1954 through 1958 inclusive at the rate of 4 mills on the valuations set forth in paragraph 3 above and interest thereon at 6% per year.

"5. The Board for the Assessment and Revision of Taxes for Chester County computed the Assessment of the taxable personal property of Rufus L. Batteiger by determining the actual value as set forth in para-

graph 3 above and adding thereto a 12% penalty. The
resulting Assessments were:

| | |
|------|------------|
| 1958 | $83,646.36 |
| 1957 | 85,727.75 |
| 1956 | 82,599.16 |
| 1955 | 48,397.87 |
| 1954 | 46,135.04 |

"6. If it is held that the assessment may properly
include the 12% penalty mentioned in paragraph 5, a
tax in the following amounts, to which shall be added
interest of 6% per year, is still due:

| | |
|------|---------|
| 1958 | $35.86 |
| 1957 | 36.74 |
| 1956 | 31.40 |
| 1955 | 20.74 |
| 1954 | 19.77 |

"7. If it is held that the assessment may not prop-
erly include the 12% penalty no additional personal
property tax is due.

> (s)  John O. Platt, Jr.
> Counsel for Estate of Rufus L.
> Batteiger
> (s) Theodore O. Rogers
> Counsel for the Personal Property
> Tax Bureau of Chester County"

The merits of this claim depend upon the construc-
tion by the court of the Act of June 17, 1913, P. L. 507,
72 PS §4821 et seq., as amended.

The above-mentioned statute has been amended
with some frequency but the amendments of import-
ance in this controversy are the Act of June 12, 1931,
P. L. 544, and the Act of July 3, 1947, P. L. 1249.

The Act of 1913, as amended, authorizes counties
to collect a personal property tax from its residents.
It also provides the counties with a means of collecting
taxes which should have been paid but were not, either

because the resident filed no return or because a return was filed but was incorrect. Section 5 of the amended Act of 1913 provides for the ordinary case of a living resident who has failed to pay all or part of his tax. Section 5.2 specifies the procedure for collecting personal property tax from a decedent's estate for taxes which decedent should have paid in his lifetime. The latter procedure is specific in including in the assessment only property actually owned by decedent. No penalty, such as claimed in this case, is authorized.

The Act of July 3, 1947, P. L. 1249, is the most recent amendment to the 1913 Act relating to the collection of delinquent taxes. Section 2 of the Act of 1947 amends section 5 of the original Act of 1913. Section 3 of the Act of 1947 inserts new sections 5.1, 5.2 and 5.3. The amended section 5 now provides for the assessment and collection from "residents" within five years of when the property should have been returned, as follows (72 PS §4844) :

"Section 5. If any taxable resident shall fail to file a return, or fail to include in any return all of his property made taxable by this act, or shall file a return which is false, incomplete, incorrect or inaccurate, the board of revision of taxes, or the county commissioners, shall make an assessment of the tax against such resident of the amount of tax for which such resident is liable, or for which he is believed by the board of revision, or county commissioners, to be liable, *to which estimated return the board of revision of taxes, or county commissioners, shall add twelve per cent, and the aggregate amount so obtained shall be the basis for taxation.*" (Italics supplied.)

A different procedure, found in a different section, is provided for collecting past due taxes from a *decedent's estate.* This is section 5.2, which provides (72 PS §4844.2) :

"Section 5.2. The executor of every will and the

administrator of every estate shall file with the register of wills or clerk of the orphans' court an additional copy of the inventory and appraisal of such estate. The register or clerk with whom the same is filed shall forthwith send a copy of said inventory and appraisal to the board of revision of taxes, or the county commissioners, as the case may be, whose duty it shall then be to proceed to assess and collect the taxes due from such decedent. Such assessment shall include all property owned, held or possessed by the decedent, which should have been returned by him for taxation for any former year or years not exceeding five years. In any case where a false, incomplete, incorrect or inaccurate return has been previously filed, the board of revision, or the county commissioners, shall make an additional assessment for the five years immediately preceeding the year of assessment in the same manner and form provided in this act. The board of revision of taxes, or the county commissioners, may proceed to collect the said tax by presenting a claim therefor to the orphans' court of the proper county, or may proceed by action or suit at law in any court of competent jurisdiction, or take any and all other appropriate steps or procedure for the collection of such taxes."

There can be no question of which section is applicable in the instant case. Section 5 is a general procedure which must give way to the special rules established for decedents' estates in section 5.2. This is the mandate of the legislature in the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §§552, 563, which directs that the legislature's intention is that "the entire statute . . . be effective and certain" and that "if the conflict between . . . two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision."

In the light of these rules of construction, the difference in the language which the legislature used in specifying the value to be used in assessing the tax is pertinent. In section 5, which is *not* applicable here, the language is:

". . . the board . . . shall make an assessment of the tax against such resident of the amount of tax for which such resident is liable, or for which he is believed by the board . . . to be liable, to which *estimated return the board . . . shall add twelve per cent, and the aggregate amount so obtained shall be the basis for taxation*." (Italics supplied.)

This expressly provides for the assessment of a penalty.

In contrast with this is the language of section 5.2, which is also specific and clear. The register is to send a copy of the inventory to the board, ". . . whose duty it shall then be to proceed to assess and collect the taxes due from such decedent. *Such assessment shall include all property owned, held or possessed by the decedent, which should have been returned by him for taxation for any former year or years not exceeding five years.*"* (Italics supplied.)

The assessment shall include only *property of the decedent.* Clearly the penalty is not property of his, nor is it property which, "should have been returned by him."

If the 1947 legislature had intended a penalty to be added to an assessment against an estate, it would have used unambiguous language such as it used only two sections earlier in section 5.

---

* Parenthetically, it may be noted that the sentence which follows the quoted language is inapplicable to this case since it applies *only* when the decedent, in his life, *had filed a return* which was "false, incomplete, incorrect or inaccurate." Decedent here filed no return at all.

Moreover, these different procedures were also found in the Act of 1913 after it had been amended by the Act of June 12, 1931, P. L. 544. As a result of the amendments of the Act of 1931, the different procedures were both contained in section 5 and the language was not as clear as at present. Nevertheless, in Leopold Tax Assessment Case, 118 Pa. Superior Ct. 158, it was held that when collecting overdue taxes of a decedent from his estate, the assessment may not include a penalty.

At the time of the Leopold case, the language authorizing collection of back taxes from living taxpayers provided that the board should prepare an estimated return, ". . . to which . . . the . . . board . . . shall add fifty per centum, and the aggregate amount so obtained shall be the basis for taxation."

Almost identical language appears in the present section 5, with the penalty reduced to 12 per cent.

Within the same section, the 1931 amendment provided a separate procedure for assessment and collection of taxes of a decedent from his estate. This was also couched in language similar to the present law except there was no express limitation on the assessment to property owned "by the decedent." It was then the duty of the board, ". . . to proceed as hereinbefore directed, for the assessment and recovery of the taxes due from such decedent . . ."

Purporting to act under the authority of section 5, Westmoreland County included a 50 percent penalty in its assessment for taxes due from a decedent which it attempted to collect from the decedent's estate. The Superior Court held the inclusion of the penalty to be error in Leopold Tax Assessment Case, supra, at pages 163-164:

"Now it will be observed that the Act of 1913 set up a procedure for the assessment of this personal prop-

erty tax which contemplated the initiation of the proceedings by an assessor with opportunity to the taxpayer to make a voluntary return and for further proceedings before the county commissioners and board for revision of taxes. By the amendments to which we have referred, there is another distinct procedure for collecting taxes from those who have theretofore escaped liability which is limited to a period of five years with the additional right to enforce collection either in the orphans' court or by suit at law in any court of competent jurisdiction. In the latter case the amount which is authorized to be collected is 'the balance of the tax which should have been paid together with interest thereon at the rate of six per centum per annum.' *If the legislature had intended, in granting this additional remedy to counties, to give them the right to exact penalties of both fifty per cent and interest, they would undoubtedly have said so in unambiguous words. On the contrary, all that is authorized to be collected is the amount which should have been paid with interest.* It seems clear to us that the amount which should have been paid was the amount which would have been due after the taxpayer had made his return according to law and the tax had been assessed in the same way. . ." (Italics supplied.)

The general rule of the Leopold case was subsequently followed in Curtis' Estate, 134 Pa. Superior Ct. 364, affirmed 335 Pa. 414, which involved an attempt by Philadelphia to assess a penalty with regard to tax due from a decedent's estate for decedent's life period. While the case is not directly in point, since the tax was assessed under the Act of 1913 as amended, the city attempted to justify the penalties under a city ordinance, and under the Act of April 19, 1883, P. L. 9, it is pertinent inasmuch as the Superior Court reaffirmed the Leopold case and held that (134 Pa. Superior Ct. 364, at page 368) :

*"Just as in the Leopold case, so here the claim is for a penalty not provided for in the amendment* and those principles are directly in point here. . ." (Italics supplied.)

Also pertinent is the opinion of the Supreme Court which affirmed the Superior Court in Curtis' Estate and concludes with the holding (335 Pa. 414, at page 418):

"We therefore agree that the penalties sought to be collected were not such as were authorized by the statutes on which the city relies; *that the only penalty collectible from the decedent's estate is that mentioned in the taxing statute—interest at the rate of 6%."* (Italics supplied.)

This court concludes the board for assessment and revision of taxes for Chester County is without lawful authority to include a 12 percent penalty in its assessment against this decedent's estate.

Accordingly, said claim is herewith dismissed.