## In Re: Peter Estate

*Edward A. Fedok*, for Accountants.
*Alfred K. Kettinger*, for Lehigh County.

COYNE, *P.J.*, January 21, 1981—In the course of adjudicating the first and final account of Robert D. Peter, Jr. and Nancy Peter Evans, executors of the last will and testament of Evelyn M. Peter, deceased, we omitted to consider a matter that was properly raised in the accountants' petition; therefore this supplemental adjudication.

The facts are undisputed and are as follows. Decedent during her lifetime neglected to file a Personal Property Tax Return for the years 1974, 1975, 1976 and 1977. Following the taxpayer's death on December 17, 1977 the County of Lehigh assessed the tax for each of those years and the executors paid all of the taxes due together with interest thereon. However, the executors have refused to pay 12 percent penalty in the amount of $39.64 which the county is seeking to collect in addition to the taxes and interest. Accordingly, the county has filed its claim with the executors and the matter is now before this court for disposition.

The Personal Property Tax Law of 1913[1] authorizes the collection of personal property taxes by counties from their residents. Whether or not the county may assess and collect the penalty in question depends upon the construction to be placed upon sections 5[2] and 5.2[3] of the act.

The County relies on section 5 as authority for

1. The Act of June 17, 1913, P.L. 507, as amended, 72 P.S. §4821 et seq.

2. 72 P.S. §4844.

3. 72 P.S. §4844.2.

assessing the penalty. That section provides as follows:

"Section 5. If any taxable resident shall fail to file a return, or fail to include in any return all of his property made taxable by this act, or shall file a return which is false, incomplete, incorrect or inaccurate, the board of revision of taxes, or the county commissioners, shall make an assessment of the tax against such resident of the amount of tax for which such resident is liable, or for which he is believed by the board of revision, or county commissioners, to be liable, to which estimated return the board of revision of taxes, or county commissioners, shall add twelve per cent, and the aggregate amount so obtained shall be the basis for taxation."

Section 5.2 of the act deals with the assessment and collection of personal property taxes from the estates of decedents. That section provides as follows:

"Section 5.2. The executor of every will and the administrator of every estate shall file with the register of wills or clerk of the orphans' court an additional copy of the inventory and appraisal of such estate. The register or clerk with whom the same is filed shall forthwith send a copy of said inventory and appraisal to the board of revision of taxes, or the county commissioners, as the case may be, whose duty it shall then be to proceed to assess and collect the taxes due from such decedent. Such assessment shall include *and be limited*

*to** all property owned, held or possessed by the decedent, which should have been returned by him for taxation for any former year or years not exceeding five years prior to the year in which the decedent died.* In any case where a false, incomplete, incorrect or inaccurate return has been previously filed the board of revision, or the county commissioners, shall make an additional assessment for the five years immediately preceding the year of assessment in the same manner and fom provided in this act. The board of revision of taxes, or the county commissioners, may proceed to collect the said tax by presenting a claim therefor to the orphans' court of the proper county, or may proceed by action or suit at law in any court of competent jurisdiction, or take any and all other appropriate steps or procedure for the collection of such taxes." (Asterisks and emphasis supplied.)

In Batteiger Estate, 11 Chester 1, 28 D. & C. 2d 77, 11 Fiduciary Rep. 660, (1961), Martin Estate, 41 D. & C. 2d 351 (1966), 16 Fiduciary Rep. 664, (1966), and Hovey Estate, 98 Montgomery 280, 66 D. & C. 2d 196, 67 D. & C. 2d 656 (1974), the courts dealt with this precise problem. In Batteiger Estate[4] the court held that in collecting personal property tax from a decedent's estate the county is without lawful authority to include a 12 percent penalty. The court pointed out that since only property owned, held or possessed by decedent may be included in the tax assessment and since the penalty is not property owned, held or possessed by

---

*The Act of April 28, 1961, P.L. 128, added to section 5.2 the words "and be limited to" and the words "prior to the year in which the decedent died."

4. Batteiger Estate arose prior to the amendments of April 28, 1961.

decedent, the penalty may not be included in the assessment in the case of a decedent's estate. If the legislature had intended a penalty to be added to an assessment against an estate, said the court, it would have used unambiguous language such as it used only two sections earlier in section 5.

In Martin Estate, supra, Judge Boyle found that since the county merely acts as the agent for the state in collecting the tax, and the statute limits the assessment to property owned, held or possessed by decedent, the county may not add a penalty to the assessment including interest and use the aggregate amount as the basis for taxation. "It is clear that the Legislature indicated its intention to limit the assessment to the property owned or held by a decedent. The assessment of penalties in addition to the tax and interest in the case at bar is not authorized by law." Martin Estate, 16 Fid.Rep. at 667.

Relying on the opinions of Judge MacElree in Batteiger Estate and Judge Boyle in Martin Estate, Judge Taxis ruled on the same controversy in Hovey Estate, supra. Judge Taxis concluded that under section 5.2 no authority exists for adding penalties to the tax and interest authorized by the statute. The county is limited to taxing only the property of decedent which should have been returned by him plus interest, without the 12 percent penalty applicable to living taxpayers.

However, in American Bank and Trust Company Exr. v. Lehigh County, 32 Lehigh L.J. 516, 45 D. & C. 2d 163 (1968), plaintiff instituted an action in assumpsit in the Court of Common Pleas of Lehigh County to recover an amount previously paid to defendant as a penalty for delinquent payment of personal property tax. Defendant filed preliminary objections in the nature of a demurrer to

the complaint. The court sustained the demurrer declaring that sections 5 and 5.2 must be read together and effect given to both. The learned Judge noted[5] that although section 5.2 makes no provision for a penalty "x x x we find nothing in the language to indicate that the Legislature intended by implication to create an exception to the penalty so clearly and unambiguously imposed by section 5 in all cases where a taxable resident shall fail to file a return."

Due to the circumstances created by the four decisions mentioned above and out of respect for our learned colleague, we have undertaken a thorough and independent review of the problem.[6] Based upon our study of the matter, we have concluded that in the case before us the claim of the county should be rejected. In the process of justifying this conclusion we see no need to repeat those reasons which were so ably presented by the learned judges in the Batteiger, Martin and Hovey cases, all of which reasons are equally pertinent to and supportive of our own conclusion. However, out of respect for our learned colleague, we feel compelled to address ourselves to certain of the arguments advanced in support of the result achieved in the American Bank case.

First of all, it seems appropriate to point out that the American Bank case might very well have been disposed of upon a procedural ground alone. As the learned judge pointed out, it was apparent on the face of plaintiff's complaint that plaintiff had failed

5.  32 Leh.L.J. at 522; 45 D. & C. 2d at 169.

6.  Batteiger Estate and Martin Estate were decided before the American Bank case; Hovey Estate was decided after that case.

to follow the procedure for obtaining a review of the tax assessment as mapped out in section 5.1 of the Personal Property Tax Law.[7] Section 5.1 provides an *exclusive* procedure by which a dissatisfied taxpayer may secure a review of his complaints and failure to follow that procedure "within the time and in the manner x x x set forth" results in a permanent bar to any other actions by him for the recovery of such tax. Notwithstanding, the learned judge chose to interpret sections 5 and 5.2 and to sustain the demurrer principally upon the results of his analysis of those statutory provisions.

In the American Bank case the learned judge appeared to be deeply troubled by what he considered to be an illogical result stemming from a construction of sections 5 and 5.2 which permits the assessment of the 12 percent penalty in cases where the taxpayer has failed to file a return and the noncompliance is discovered during his lifetime but not in cases where the taxpayer dies before the noncompliance surfaces. Also, the learned judge pointed out that where the taxpayer files a false, incomplete, incorrect or inaccurate return the 12 percent penalty is applicable even though the noncompliance comes to light after his demise.

In coming to grips with the problem before us, our first move has been to review the history of the pertinent statutory provisions. The present Personal Property Tax Law is the Act of June 17, 1913, P.L. 507, as amended, section 5 of which originally read as follows:

"Section 5. That upon the refusal or failure of any taxable person, copartnership, unincorporated as-

---

7. 72 P.S. §4844.1

sociation, limited partnership, joint-stock association or corporation, to make a return properly verified by oath or affirmation as required by this act, within ten days after being notified so to do, it shall be the duty of the assesor to make a return for such taxable person, copartnership, unincorporated association, joint-stock association, limited partnership, or corporation from the best information he can obtain; he shall examine the records and lists of judgments and mortgages returned by the prothonotary and the recorder of deeds and mortgages, under the seventh and eighth sections of this act, in the commissioners' office or office of the board or revision of taxes or remaining in their respective offices, and assess such defaulting person, copartnership, unincorporated association, joint-stock association, limited partnership, or corporation with the amounts of all such liens, with interest thereon, and add thereto the amount of all taxable property obtained from all other sources of information; which return the proper county commissioners or board of revision of taxes shall have power, and it shall be their duty, to revise and correct according to the best information they can command from the records in their office or other sources, and it shall be their duty to send for a person, persons, and papers, and to administer an oath or affirmation to him or them in such form as shall be prescribed, to which revised and corrected estimated return the proper county commissioners or board of revision of taxes shall add fifty per centum, and the aggregate amount so obtained shall be the basis for taxation: Provided, That if such taxable person, or copartnership or unincorporated association or company, limited partnership joint-stock association or corporation, on or before the day fixed for appeals from assessments, shall pre-

sent reasons supported by oath or affirmation, satisfactory to the proper county commissioners or board of revision of taxes, excusing a failure to make a return such as should be made to the assessors, and shall then make such return, the proper county commissioners or board of revision of taxes may substitute such return for that returned by the assessor and corrected as aforesaid, to have like effect as if no failure to return had occurred."

A thorough reading of this statute discloses that nowhere does it make special mention of the personal representatives of decedents' estate. In addition, the appellate courts of the Commonwealth had held that notwithstanding the fact that a taxpayer had failed to file a return, the taxing authorities could not make a valid tax assessment after the expiration of the year in which the assessment should have been made and the tax paid. (See Leopold Tax Assessment Case, 118 Pa. Super. 158, 160, 161 (1935) and cases cited.)

In 1923 (the Act of May 31, 1923, P.L. 474) and again in 1927 (the Act of May 13, 1927, P.L. 985), the legislature amended section 5 of the Act of 1913 in an effort to enable the county to enforce tax liability on delinquent taxpayers. However, both of these amendments were declared unconstitutional on the ground that their titles were defective.[8] As a result of these judicial decisions, the legislature adopted the Act of June 12, 1931, P.L. 544 which added to Section 5 the following:

"x x x: Provided further, That in cases where, by the refusal or failure of any taxable person, copartnership, unincorporated association, limited partnership, joint-stock association, or corporation,

---

8. See preamble to the Act of June 12, 1931, P.L. 544.

to make return, a return has been made by the assessor which is incomplete and a penalty has been added by the county commissioners or board of revision of taxes or a return so made and no penalty added, or whereby such refusal or failure, no return has been made either by him or it or by the assessor, such action shall not stop the county commissioners or board of revision of taxes from the assessment and collection, from him or it or from the estate of any deceased person so failing or refusing, of any tax or additional tax due whenever the facts may become known; *and it shall be the duty of the county commissioners or board of revision of taxes to assess or reassess any such personal property for any former year or years, not exceeding five years and collect the tax or the balance of the tax which should have been paid, together with interest thereon at the rate of six per centum per annum.* In ascertaining the balance found to be due, no credit shall be given for any penalty formerly assessed and paid: And provided further, That in every case of a false or incomplete return, it shall be the duty of the county commissioners or board of revision of taxes, whenever the facts may become known, to reassess the personal property of any such tax for any former year or years and to collect the balance of the tax found to be due, together with interest at the rate of six per centum per annum: And provided further, That the executor of every will, and the administrator of every estate, at the time of filing with the register of wills or clerk of the orphans' court the inventory and appraisal of such estate, or of any affidavit setting forth the real and personal property of such decedent, for the purpose of determining the inheritance tax, shall, in addition thereto, file an affidavit in duplicate setting forth the items included

in such inventory or affidavit which may be liable to a tax during the last completed taxing period for county purposes, or, in cities coextensive with counties, for county and city purposes, under the provisions of this act.

"And the officer with whom the same is filed shall forthwith send one of said copies of such affidavit to the county commissioners or the board for the assessment and revision of taxes, as the case may be, *whose duty it shall then be to proceed as hereinabove directed, for the assessment and recovery of the taxes due from such decedent to the said counties or cities coextensive therewith, with interest as above provided;* and, for that purpose, to present a claim therefor to the orphans' court of the proper county, or to proceed by action or suit at law in any court of competent jurisdiction for such recovery thereof, or to take any or all appropriate steps or procedure for the collection of said taxes.

"And provided further, That it shall be the duty of the county commissioners or board of revision of taxes, upon their making any assessment or reassessment where no return has been made or a false or incomplete return has been made as aforesaid, to give notice thereof to the taxpayer, or his or her executor or administrator, of the assessment and when they will sit to hear an appeal therefrom." (Emphasis supplied.)

In 1945 section 5 was amended once more. This amendment, the Act of May 18, 1945, P.L. 703, simply inserted the words "an incorrect, inaccurate" before the words "false or incomplete return" wherever the latter words appeared in section 5.

Pursuant to the Act of 1913 as amended by the Act of 1931 and the Act of 1945 the taxing authorities were now authorized to assess and collect taxes for prior years, not exceeding five, in which

no returns had been filed, no return made by the assessor and no taxes paid. Note, too, that cases involving failure to file returns were accorded entirely different treatment from cases where "incorrect, inaccurate, false or incomplete" returns had been filed in that the county was authorized to collect only the tax which should have been paid plus six percent interest per annum; the collection of the fifty per cent penalty was not authorized.

In 1947 section 5 was completely rewritten (the Act of July 3, 1947, P.L. 1249) and in its place appeared the following:

"Section 5. If any taxable resident shall fail to file a return, or fail to include in any return all of his property made taxable by this act, or shall file a return which is false, incomplete, incorrect or inaccurate, the board of revision of taxes, or the county commissioners, shall make an assessment of the tax against such resident of the amount of tax for which such resident is liable, or for which he is believed by the board of revision, or county commissioners, to be liable, to which estimated return the board of revision of taxes, or county commissioners, shall add twelve percent, and the aggregate amount so obtained shall be the basis for taxation.

"The board of revision, or the proper county commissioners, shall notify by mail such resident of the estimated assessment. If such resident is dissatisfied with the assessment so made, he may, on or before the day fixed for appeals from assessments, present reasons, supported by oath or affirmation, for his failure to file a return to include all of his taxable property therein; or for having made a return which was incomplete, incorrect or inaccurate, and the board of revision of taxes, or the county commissioners, as the case may be, may, if

satisfied with the excuse so presented, permit the taxpayer to file his own return and substitute said return for the estimated return made by the board of revision of taxes or the county commissioners. In all cases where a false return has been filed by the taxpayer, the board of revision of taxes or the county commissioners, may not relieve the taxpayer from the payment of the twelve percent penalty, but the estimated return shall be final, except in those cases in which a true and correct return shall reveal a higher assessed value than that contained in the estimated return, in which case the tax and penalty shall be based upon the true valuation.

"An assessment, as herein provided, may be made by the board of revision of taxes, or the county commissioners, at any time within five years after any property owned, held or possessed, or alleged to have been so owned, held or possessed, by any resident should have been returned by him for taxation, notwithstanding he shall have paid a tax assessed on the basis of returns previously made or filed, and notwithstanding the board of revision of taxes, or the county commissioners, shall have made previous assessments against such resident. In any such case no credit shall be given for any penalty formerly assessed and paid.

"Section 5.1. x x x.[9]

"Section 5.2. The executor of every will and the

---

9. Sections 5.1(a) and (b), as amended by the Act of December 13, 1955, P.L. 836, 72 P.S. §4844.1 (a) and (b) establish the procedures to be followed by taxpayers who are dissatisfied with their assessments and desire the latter to be reviewed by the county board of revision of taxes and the courts. Their contents are not pertinent to this inqury and therefore have not been quoted.

administrator of every estate shall file with the register of wills or clerk of the orphans' court an additional copy of the inventory and appraisal of such estate. The register or clerk with whom the same is filed shall forthwith send a copy of said inventory and appraisal to the board of revision of taxes, or the county commissioners, as the case may be, whose duty it shall then be to proceed to assess and collect the taxes due from such decedent. *Such assessment shall include all property owned, held or possessed by the decedent which should have been returned by him for taxation for any former year or years not exceeding five years.* In any case where a false, incomplete, incorrect or inaccurate return has been previously filed, the board of revision, or the county commissioners, shall make an additional assessment for the five years immediately preceding the year of assessment in the same manner and form provided in this act. The board of revision of taxes, or the county commissioners, may proceed to collect the said tax by presenting a claim therefor to the orphans' court of the proper county, or may proceed by action or suit at law in any court of competent jurisdiction, or take any and all other appropriate steps or procedure for the collection of such taxes." (Emphasis supplied.)

And finally section 5.2, supra, was amended by the Act of April 28, 1961, P.L. 128, into its present form. (See pages 214 and 215, supra.)

A review of this legislative history reveals that up until the passage of the Act of July 3, 1947, P.L. 1249, no distinction existed between those cases involving the estates of deceased taxpayers and living taxpayers. However, in 1947 a new section, section 5.2, dealing specifically with decedent's estates was added to the Personal Property Tax

Law. While much of the language of section 5.2 was gleaned from its statutory ancestors, the legislature added the following new language:

"Such assessment shall include all property owned, held or possessed by the decedent, which should have been returned by him for taxation for any former year or years not exceeding five years."

Then as noted above, in 1961 the legislature inserted the words "and be limited to" after the word "include" and appended the words "prior to the year in which the decedent died" to the end of that sentence.

In the writer's mind all of this simply adds up to the fact that the legislature, commencing in 1947, determined to treat differently a tax deficiency arising out of a failure by the taxpayer to file a return prior to his demise by relieving the personal representative of decedent's estate from paying the 12 percent penalty imposed in all other instances of deficiency assessments. Moreover, we think this view is reinforced by the action of the legislature in 1961 when it inserted the words limiting the assessment solely to the value of the property "owned, held or possessed by the decedent." While, as was pointed out in the American Bank case, it may seem illogical to conclude that the legislature intended to treat differently from all other instances involving deficiency assessments the situation where the taxpayer failed to file a return and then died, still if the legislature intended that all cases involving deficiency assessments be treated alike, what then was the logic behind the creation of section 5.2, the inclusion therein of the new language quoted above and the adoption of the 1961 amendment to section 5.2? Under the circumstances the actions of the legislature in creating section 5.2 and adopting the

1961 amendment would seem to be entirely without meaning or purpose unless the legislature intended to create and emphasize a distinction between cases involving living taxpayers and cases involving deceased taxpayers.

We must also question the statement of our sister court that it is illogical to conclude that the legislature intended to treat the situation where the taxpayer failed to file a return and then died differently from other cases. To begin with, it seems very clear to us that in dealing with this problem the legislature has established three separate categories of cases. The first category includes cases where false returns have been filed. In such instances no distinction is made between cases involving living taxpayers and deceased taxpayers. In either situation where a false return has been filed the taxpayer may not be relieved from payment of the 12 percent penalty and the estimated return shall be final unless a true and correct return reveals a higher assessed value than that contained in the estimated return, in which case the latter return will be accepted.

The second category includes cases where incomplete, incorrect or inaccurate returns have been filed. Again no distinction is made between cases involving living and those involving deceased taxpayers. In either instance the taxpayer or his representative may present reasons "supported by oath or affirmation" for having made an incomplete, incorrect or inaccurate return and the board of revision of taxes or the county commissioners, as the case may be, may, if satisfied with the taxpayer's excuse, permit the taxpayer "to file his own return and substitute said return for the estimated return" made by the county authorities. Of course, the net result of granting such relief is to relieve the taxpayer from payment of the 12 percent penalty.

In the cases involving a failure to file a return there is available to a living taxpayer the same procedure available to taxpayers who have filed an incomplete, incorrect or inaccurate return. Where, however, there has been a failure to file a return and the taxpayer is deceased there is no provision for an appeal to the board of revision of taxes or the county commissioners. On the other hand, the legislature has "limited" the assessment to the "property owned, held or possessed by decedent, which should have been returned by him for taxation for any former year or years not exceeding five years" and the collection of the 12 percent penalty has not been authorized. From the foregoing, therefore, we think it quite clear that the legislature did intend to deal differently with those cases where no return had been filed and the taxpayer had died.

And finally we take note of the firmly established legal principle that statutes imposing a tax must be strictly construed and all reasonable doubt resolved in favor of the taxpayer: Estate of Carlson, 479 Pa. 421, 388 A. 2d 726 (1978). It is our opinion that in this instance the legislature has spelled out quite clearly the basis for the assessment of personal property taxes in cases where no return has been filed and the taxpayer is deceased. It is not within our province to alter that basis by judicial decision. Consequently, for this, as well as for the other reasons heretofore expressed, we enter the following

DECREE

And now, January 21, 1981, it is ordered and decreed that the claim of the County of Lehigh for $39.64 be, and the same is, dismissed.

This decree shall become final unless exceptions thereto are filed within 15 days after service of this adjudication and order in accordance with the rules of court.